**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 24 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FEDERAL DEPOSIT INSURANCE
CORPORATION, Receiver for and on
behalf of HERITAGE BANK AND
TRUST,

        Plaintiff-Appellee,

v.

UNITED PACIFIC INSURANCE
COMPANY, a corporation,
RELIANCE INSURANCE
COMPANY, a corporation,

        Defendants-Appellants.

No. 96-4210

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 90-CV-633)

---

Norman R. Carpenter, of Faegre & Benson, Minneapolis, Minnesota (Philip L.
Bruner with him on the briefs) for Defendants-Appellants.

Kathryn R. Norcross, Counsel, of Federal Deposit Insurance Corporation,
Washington, D. C., (Ann S. Duross, Assistant General Counsel and Thomas L.
Hindes, Senior Counsel, of Federal Deposit Insurance Corporation, Washington,
D. C., and Mark E. Friedman, of Garvey, Shubert & Barer, Portland, Oregon, with
her on the brief) for Plaintiff-Appellee.

---

Before **BALDOCK, HOLLOWAY,** and **MURPHY,** Circuit Judges.

**MURPHY**, Circuit Judge.

United Pacific Insurance Company and Reliance Insurance Company ("Defendants") appeal the district court's denial of their Rule 60(b) motions seeking relief from judgment. Defendants also challenge the fairness of the proceedings on remand from the previous appeal of this case, arguing the district court's procedures prevented a fair and accurate computation of the Federal Deposit Insurance Corporation's ("FDIC") net recovery from the settlement of a legal malpractice suit against a third party. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court reverses and remands.

## I. BACKGROUND

The facts of this case have been fully set out in a previous opinion of this court. *See FDIC v. United Pac. Ins. Co.*, 20 F.3d 1070, 1072-75 (10th Cir. 1994). We therefore repeat only those facts necessary to resolve the current appeal.

In June 1990, the FDIC, as receiver for Heritage Bank and Trust ("Heritage"), brought this action against Defendants United Pacific Insurance Company and Reliance Insurance Company seeking recovery under two fidelity bonds issued by Defendants. The FDIC sought to recover for a loss from a loan

made by Heritage in 1984 to Hartwell International, N.V. ("Hartwell"), a Netherlands Antilles corporation, in the amount of approximately $4,600,000.

The Hartwell loan was secured by promissory notes, which were in turn secured by certificates of deposit purchased from Heritage totaling approximately $5,800,000. The makers on the notes were 1522 individual investors in a number of oil and gas drilling partnerships, known as the Transpac Partnerships. The notes were payable to Andover Finance, Ltd. and assigned to Hartwell, which then pledged the notes to Heritage as security for the loan.

After taking over Heritage in April 1987, the FDIC settled a number of securities fraud claims brought by Transpac investors against Heritage seeking cancellation of their promissory notes and return of their certificates of deposit. In April 1990, the FDIC also brought a malpractice action against John Lowe, outside legal counsel for Heritage during the period when the Hartwell loan transaction took place. The FDIC settled all claims against Lowe and his firm in exchange for $1,950,000.

In the suit against Defendants, the FDIC alleged that John R. Starley, president of Heritage, engaged in dishonest or fraudulent acts with the intent to injure Heritage and to secure personal financial gain, for which conduct Defendants' bonds provided indemnity. The bonds provided that the insurer must indemnify Heritage up to the limits of the bond for "[l]oss resulting directly from

-3-

dishonest or fraudulent acts committed by an [e]mployee" of Heritage.  Section 7

of the bonds further provided:

> (a)  In the event of payment under this bond, the Insured shall deliver, if so requested by the [Insurer], an assignment of such of the Insured's rights, title and interest and causes of action as it has against any person or entity to the extent of the loss payment.
> (b)  In the event of payment under this bond, the [Insurer] shall be subrogated to all of the Insured's rights of recovery therefor against any person or entity to the extent of such payment.
> (c)  Recoveries, whether effected by the [Insurer] or by the Insured, shall be applied net of the expense of such recovery first to the satisfaction of the Insured's loss which would otherwise have been paid but for the fact that it is in excess of either the Single or Aggregate Limit of Liability, secondly, to the [Insurer] as reimbursement of amounts paid in settlement of the Insured's claim, and thirdly, to the Insured in satisfaction of any Deductible Amount.
> . . . .
> . . . .
> (e) The Insured shall execute all papers and render assistance to secure to the [Insurer] the rights and causes of action provided for herein.  The Insured shall do nothing after discovery of loss to prejudice such rights or causes of action.

Prior to the jury trial in this case, the district court granted the FDIC's *in limine* motion to exclude evidence relating to the Lowe settlement on the ground that the settlement was a recovery from a collateral source which would not reduce the loan loss claim under the bonds.  The district court also granted the FDIC's *in limine* motion to exclude evidence attempting to project the FDIC's recoveries through possible settlements of the remaining investor claims and the liquidation of the remaining loan collateral, on the ground that such evidence would be speculative.

At trial, the FDIC claimed it suffered a loss of $4,586,257, the amount loaned to Hartwell.  To this amount, the FDIC credited $1,253,213, which represented the net recoveries it obtained through the time of trial from settlements with some of the named investors on certificates of deposit held as collateral for the Hartwell loan.[1]  Pursuant to the district court's earlier rulings, no evidence was presented concerning the status or potential value of the remaining collateral or the recovery from the Lowe settlement.  Defendants were permitted to argue, however, that because the Hartwell loan was fully collateralized, the FDIC suffered no loss on the loan.

The jury returned a special verdict for the FDIC, finding that Starley, while an officer of Heritage, committed a dishonest act with manifest intent to cause Heritage to sustain a loss and obtain financial benefit for himself or another person.  The jury further found that the loss to Heritage resulting from Starley's dishonest act was $3,333,044.  In reaching this figure, the jury deducted from the $4,586,257 loan balance $1,253,213 for the FDIC's net recovery from the loan collateral which had been liquidated as of the date of trial.  Consistent with the

---

[1]The FDIC presented evidence at trial of its settlement with 548 of the 1522 investors.  The FDIC claimed that in settling these investors' claims it paid out $658,992 in order to retain the certificates of deposit worth a total of $2,228,295, and incurred $316,090 in administrative expenses in settling the claims, resulting in a net recovery on the certificates of $1,253,213.

terms of the bonds, the district court then entered judgment in favor of the FDIC in the amount of the bonds, $1,450,000, plus interest.

On appeal, this court reversed the district court's ruling excluding evidence of the Lowe settlement, but affirmed on the remaining liability and damages issues raised by Defendants. *See id.* at 1083. With respect to the Lowe settlement issue, the court remanded the case to the district court to determine what portion of the $1,950,000 settlement represented common damages, requiring a credit against the judgment to avoid a double recovery by the FDIC for the same loss. *See id.* Noting that the jury had concluded the FDIC sustained a loss greater than the limits of the bonds, the court further directed that the applicable portion of the Lowe settlement proceeds must first reduce the FDIC's total loss before the proceeds could be applied to reduce the judgment. *See id.* at 1083 n.12.

On remand, in June 1994, Defendants filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). In addition to arguments relating to the Lowe settlement and a $91,798 loan fee which Defendants argued should be credited against the judgment, Defendants requested that the district court issue an order compelling an accounting for all Hartwell loan collateral which remained in the hands of the FDIC and that the district court reduce the judgment by the value of the notes and certificates upon which the

FDIC had recovered. Defendants argued that the remaining collateral should be credited against the judgment because the FDIC would otherwise obtain a "double recovery" from both the collateral and the bond proceeds. Defendants further asserted that this court's opinion contemplated that a credit would be given to Defendants for the value of the remaining collateral and that their Rule 60(b) motion provided a procedural mechanism to accomplish what this court contemplated in its decision.

In response, the FDIC argued that Defendants' Rule 60(b) motion sought to circumvent this court's mandate by raising substantive issues already disposed of on appeal. The FDIC asserted that this court affirmed all issues relating to liability and damages with the exception of giving Defendants a credit for the FDIC's net recovery from the Lowe settlement. The FDIC concluded that consideration of any other issue on remand would violate this court's mandate. The FDIC further argued that Defendants had failed to demonstrate extraordinary circumstances justifying relief under Rule 60(b)(6).[2]

---

[2]With respect to Defendants' request for an accounting and credit for the remaining collateral, the FDIC asserted that this had been adjudicated at trial based on the district court's ruling that future recovery from investors was speculative and not admissible at trial and based on the district court's denial of Defendants' Motion for JNOV and New Trial in which Defendants argued the FDIC did not suffer a loss because it still held notes and certificates of deposit as collateral for the loan.

In July 1994, the FDIC filed a Motion for Order to Determine Calculation of Damages on Remand, requesting that the district court establish by order that Defendants were only entitled to a credit for the FDIC's net recovery from the Lowe settlement and that the judgment would only be reduced if that net recovery was greater than the $1,883,044 difference between the $3,333,044 jury verdict and the bond amount. Further, the FDIC argued that unless the net settlement recovery exceeded $1,883,044, it would be unnecessary for the district court to determine the extent to which the judgment and the Lowe settlement represented common damages.

In November 1994, the district court granted the FDIC's motion and denied Defendants' Rule 60(b) motion "[f]or the reasons outlined by [the FDIC] in its responsive pleading."

In April 1995, Defendants filed a Motion to Intervene in the state court Heritage receivership proceedings, asserting they had an interest in the remaining collateral on the Hartwell loan. Defendants stated that the Hartwell loan collateral was free of adverse claims pursuant to a stipulation filed in October 1994 in the state proceeding which allegedly resolved the dispute between the Transpac investors and the FDIC over the notes and certificates. In August 1995, before the state court ruled on Defendants' motion, Defendants and the FDIC stipulated that Defendants' Motion to Intervene would be stayed and that the

FDIC would prepare an accounting of the disposition of the Hartwell assets in the receivership, including the promissory notes and certificates of deposit.

In December 1995, Defendants filed a second Rule 60(b) motion for relief from judgment premised on the accounting provided by the FDIC in the Heritage receivership proceeding. Defendants asserted that the FDIC's recovery through the Lowe settlement and liquidation of the remaining loan collateral exceeded the Hartwell loan loss and that Defendants should therefore be relieved from payment under the bonds. Defendants argued that the FDIC's full recovery on the loan loss constituted extraordinary circumstances warranting relief under Rule 60(b)(6).

The FDIC opposed Defendants' Rule 60(b) motion, arguing that the issues raised by Defendants were fully litigated at trial and were foreclosed by this court's mandate. In addition, the FDIC stated that "any issues of credit, assignment, or subrogation were not raised by the defendants at trial" or in their pleadings and therefore these issues were not preserved. The FDIC further asserted that Defendants' subrogation and assignment rights under the bonds were their exclusive remedies and that Defendants had failed to properly and timely assert their rights in the state receivership proceedings as required by state law. The FDIC concluded that the federal district court therefore lacked jurisdiction to consider the subrogation and assignment claims. Finally, the FDIC again argued

Defendants failed to demonstrate that exceptional circumstances existed warranting Rule 60(b) relief.

The district court again denied Defendants' Rule 60(b) motion. The court reasoned that the loss from the Hartwell loan and the collectibility of the disputed collateral were fully litigated at trial and on appeal. The court also concluded that Defendants failed to demonstrate extraordinary circumstances and that reviewing any issue other than the Lowe settlement would therefore violate the mandate on remand.

Based on affidavits from the FDIC's counsel concerning the FDIC's legal fees and administrative expenses incurred in the Lowe settlement, the district court issued an order finding that the FDIC's net recovery from the Lowe settlement was $1,512,855.34. Because that net recovery was less than the $1,883,044 difference between the $3,333,044 jury verdict and the bond coverage, the district court concluded the settlement proceeds did not reduce the original amount of the judgment. The district court thus found it unnecessary to determine whether the judgment and the settlement proceeds represented common damages. Accordingly, the court entered judgment for the FDIC in the amount of $1,450,000, plus prejudgment interest and costs. The court also ordered Defendants to pay postjudgment interest pursuant to 28 U.S.C. § 1961(a).

## II. DISCUSSION

## A. Rule 60(b) Request for Relief from Judgment

Defendants assert the district court improperly denied their Rule 60(b) motions for relief from judgment.[3] Defendants rely upon the FDIC's alleged recovery of the full amount of its loss on the Hartwell loan from the Lowe

---

[3]Federal Rule of Civil Procedure 60(b) provides, in relevant part:
> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for the following reasons: . . . (3) fraud . . . , misrepresentation, or other misconduct of an adverse party; . . . (5) the judgment has been satisfied, released, or discharged . . . ; or (6) any other reason justifying relief from the operation of the judgment.

On appeal, Defendants state they are seeking review of the district court's denial of their motions pursuant to Rule 60(b)(5). A review of the record indicates, however, that to the extent Defendants identified the specific clause of Rule 60(b) on which they were relying, Defendants relied on 60(b)(6) before the district court. In their first Rule 60(b) motion, Defendants did not identify any of the six grounds delineated in the rule. Because Defendants did not specify the particular clause of Rule 60(b) they were relying on, the FDIC assumed in its response to Defendants' motion that they were relying on 60(b)(6). In their second Rule 60(b) motion, Defendants requested relief under 60(b)(6). In oral argument on their second motion, Defendants asserted relief was appropriate under either 60(b)(3), (5), or (6). Defendants did not further address, however, which of these grounds they were specifically relying on during oral argument before the district court, nor did Defendants provide any specific analysis or authority with respect to any of these grounds.

Although Defendants have been inconsistent in identifying the specific grounds for relief under Rule 60(b), Defendants have consistently presented the same argument for seeking relief from judgment. The FDIC, therefore, has not been deprived of an opportunity to respond to Defendants' arguments. Further, although Defendants apparently now characterize their motions as relying on 60(b)(5), rather than 60(b)(6), "we need not rigidly compartmentalize our analysis upon review. Instead, we look to the record in its entirety to see if the trial judge . . . failed to recognize some . . . compelling reason for relief to be granted." *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (citation omitted).

-11-

settlement and the post-trial settlement of investor claims and subsequent liquidation of the remaining loan collateral. Defendants argue they are entitled to relief based on bond provisions and because it is necessary to avoid double recovery by the FDIC.

This court has recognized that Rule 60(b) provides courts with a "grand reservoir of equitable power to do justice in a particular case." *State Bank of S. Utah v. Gledhill (In re Gledhill)*, 76 F.3d 1070, 1080 (10th Cir. 1996) (internal quotations omitted). A district court accordingly has substantial discretion to grant relief as justice requires under Rule 60(b). *See Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990). Nevertheless, such relief "is extraordinary and may only be granted in exceptional circumstances." *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990).

This court reviews the district court's denial of a Rule 60(b) motion for abuse of discretion. *See Pelican Prod. Corp.*, 893 F.2d at 1145. "'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 727 (10th Cir. 1993) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

1. **Relitigation of Issues**

The FDIC argues the district court properly denied Defendants' request for relief because Defendants' Rule 60(b) motions constituted an improper attempt to relitigate substantive issues which were raised and decided at trial and which were affirmed on appeal. In denying Defendants' second Rule 60(b) motion, the district court likewise concluded that "the collectibility of the disputed collateral [was] fully litigated at trial and on appeal."

As the FDIC notes, Rule 60(b) is "not available to allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996). In requesting relief pursuant to Rule 60(b) based on the FDIC's recovery from the post-trial liquidation of the remaining collateral, however, Defendants were not merely rearguing issues which were already raised at trial or which were available for presentation at trial.

Before trial, the district court granted the FDIC's *in limine* motion to exclude evidence relating to the FDIC's future settlements with investors and potential recovery from the liquidation of the remaining loan collateral on the ground that such evidence would be speculative. Because this evidence was excluded from trial, the collectibility and status of collateral liquidated following

the trial was not a matter which was actually before the jury or trial court or which could have been presented by Defendants at trial. Moreover, in ruling that evidence of the FDIC's potential recovery from the remaining collateral could not be presented at trial, the district court did not resolve the issue of whether Defendants were entitled to a credit under the bonds for any actual future recoveries obtained by the FDIC.

The FDIC, however, asserts that Defendants' Rule 60(b) motions constituted an attempt to relitigate the jury's determination of the FDIC's "loss" under the bonds, a determination which was affirmed on appeal. As the FDIC notes, issues relating to whether the FDIC actually sustained a loss under the bonds and relating to the actual amount of that loss were litigated at trial and disposed of on appeal. *See United Pac. Ins. Co.*, 20 F.3d at 1079-83. Contrary to the FDIC's characterization of Defendants' Rule 60(b) motions, however, Defendants are not seeking to relitigate those issues.

As this court noted in our prior opinion, the starting point for determining the FDIC's loss was the full amount of the loan, $4,586,257, which would never be collected from Hartwell. *See id.* at 1080. Under the bond terms, the loan collateral that was liquidated by the FDIC at the time of trial was a "recovery" against that loss. *See id.* at 1081. In reaching the verdict of $3,333,044, the jury

credited against the total $4,586,257 loss $1,253,213 in net recoveries from settling investors. *See id.* at 1081 n.9.

In seeking a credit against the judgment for the net amount recovered by the FDIC on the remaining loan collateral, Defendants are not attempting to relitigate the issue of the total loss sustained by the FDIC. Defendants are not now challenging the jury's determination that the FDIC suffered a loss within the coverage of the bonds. Instead, Defendants are merely seeking to be partially or fully relieved from the judgment based on the FDIC's recovery for the same loss through the liquidation of the remaining loan collateral.

Thus, the issue of Defendants' right to a credit for the FDIC's post-trial liquidation of the remaining loan collateral was not litigated and decided at trial or on appeal. To the extent the district court relied on Defendants' alleged relitigation of the issues in denying relief under Rule 60(b), the district court abused its discretion. *Cf. Lyons*, 994 F.2d at 727 (noting district court abuses its discretion when decision is based on erroneous view of law or clearly erroneous assessment of evidence).

### 2. Mandate of Appellate Court

The FDIC also argues that Defendants' Rule 60(b) motions were an attempt to have the district court disregard this court's mandate on remand. The district court appears to have assumed that it was precluded from granting Defendants'

motions by this court's mandate. The district court stated that "Rule 60(b)(6) cannot be properly used to alter the substantive content of a judgment once it has been affirmed on appeal, except in extraordinary circumstances." The district court then concluded that Defendants had failed to demonstrate extraordinary circumstances and that reconsideration of any issue other than the Lowe settlement would therefore violate the Tenth Circuit mandate remanding for "further proceedings consistent with" the Tenth Circuit's opinion.

This court's mandate did not, however, preclude the district court from granting Defendants relief under Rule 60(b). Although strict compliance with the mandate of the reviewing court is required, a district court may consider a Rule 60(b) motion to reopen a decision that has been affirmed on appeal when the basis for the motion was not before the appellate court or resolved on appeal. *See Standard Oil Co. of Calif. v. United States*, 429 U.S. 17, 18-19 (1976). A court is not flouting the mandate of the appellate court by acting on a motion raising events occurring after the trial or appeal because "the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events." *Id.* at 18.

In this case, Defendants were seeking to reopen the judgment to consider whether they are entitled to a credit for the FDIC's post-trial recovery from the remaining collateral. Defendants' motions thus related to facts arising after the

trial: the post-trial settlements with investors and the liquidation of the remaining collateral. The motions did not raise an issue which was resolved on appeal, either expressly or implicitly.

In our prior opinion, this court did refer to the loan collateral. In addressing Defendants' argument that there was no loss under the bonds because the loan was fully collateralized, the court stated that "whether a loss occurred is determined regardless of the security the bank has for the loss." *United Pac. Ins. Co.*, 20 F.3d at 1081 (internal quotations omitted). The court then continued:

> The value of the collateral does not define the loss; rather, if the collateral is finally determined in favor of the insured, under the terms of the bond, it becomes a "recovery" applicable against the loss. The certificates of deposit and promissory notes that remain the subject of separate litigation have not yet been finally determined in favor of the FDIC; therefore, until such time as they are, or until the FDIC enters into settlements with the remaining investors, the value of the certificates does not reduce the FDIC's loss.

*Id.* (citations omitted).

This court further rejected Defendants' argument that there was no loss under the bonds because the FDIC was a holder in due course of the remaining collateral. The court stated that this case was not the proper forum for deciding whether the FDIC was a holder in due course of the collateral, as the investors were not parties in the case. *See id.* at 1081-82. The court further noted that

> the ultimate collectibility of the notes and certificates does not absolve Defendant from its present liability under its bond. This is so because Defendant is liable until the notes and certificate are

finally determined in favor of the FDIC, or until the FDIC enters into settlements with the remaining investors.

*Id.* at 1082 (internal quotations, alterations, and citation omitted).

Although the above language in this court's prior opinion did not expressly address or approve Defendants' present claims, the language certainly did not foreclose Defendants from requesting that the district court reopen the judgment based on the FDIC's post-trial recovery on the remaining collateral. Nor would the district court's grant of relief under Rule 60(b) flout this court's mandate remanding the case "for further proceedings consistent with this opinion." *Id.* at 1083. The district court was therefore not precluded by this court's mandate from considering the Rule 60(b) motions. The district court's denial of relief on the ground that such denial was dictated by this court's mandate thus constituted an abuse of discretion. *Cf. Lyons*, 994 F.2d at 727.

### 3. Allocation of Recoveries Under the Bond Provisions

The FDIC also asserts that Defendants cannot obtain relief under Rule 60(b) because (1) they failed to preserve their rights to subrogation or assignment in this case; (2) they have no subrogation or assignment rights to the collateral under the terms of the bonds until Defendants have paid on the bonds; (3) they cannot acquire subrogation rights to collateral already liquidated; and (4) they failed to preserve any subrogation or assignment claim they may have had against the general receivership estate. All of these issues are resolved by Defendants'

reliance on section 7(c) of the bonds rather than on sections 7(a) and 7(b), the assignment and subrogation provisions of the bonds.

Sections 7(a) and 7(b) of the bonds provide that after the insurer makes payment under the bond, the insurer is entitled to the insured's rights of recovery by assignment or subrogation against any person or entity to the extent of such payment. The FDIC asserts Defendants have not effectively pursued their rights under these sections. Although Defendants may not have pursued their assignment or subrogation rights under the bonds, however, they nevertheless remain entitled to a credit for "net recoveries" obtained by the FDIC on the losses covered by the bonds pursuant to section 7(c) of the bonds. *See United Pac. Ins. Co.*, 20 F.3d at 1083; *see also FDIC v. Fidelity & Deposit Co. of Md.*, 827 F. Supp. 385, 389 (M.D. La. 1993), *aff'd* 45 F.3d 969 (5th Cir. 1995).

Section 7(c) provides the manner in which recoveries by either the insured or the insurer must be allocated. Section 7(c) provides that recoveries shall be applied, net of the expense of such recovery, first, to satisfy the insured's loss in excess of the amount paid under the bond, second, to the insurer as reimbursement of amounts paid in settlement of the insured's claim, and third, to the insured to satisfy any deductible amount. Therefore, if the FDIC has obtained a net recovery on the loss which exceeds the difference between its total loss and

the bond limits, Defendants are entitled to a credit from the FDIC's net recovery.[4]

The failure to effectively pursue the rights provided by sections 7(a) and 7(b) of

the bonds does not affect the operation of section 7(c).

### 4. Extraordinary Circumstances Warranting Rule 60(b) Relief

Finally, the FDIC argues Defendants have not shown extraordinary

circumstances sufficient to justify relief under Rule 60(b). In so arguing, the

---

[4]In conjunction with their subrogation argument, the FDIC also asserts that the district court was without jurisdiction to grant the relief sought by Defendants. The FDIC argues that in claiming they were entitled to a credit on the judgment based on the bond provisions, Defendants were essentially asserting a subrogation or assignment claim against general assets of the receivership. The FDIC therefore maintains that Defendants were required to assert a claim in the state receivership proceedings and the district court was without jurisdiction to consider Defendants' claim against assets under the jurisdiction of the state courts. In denying Defendants' second Rule 60(b) motion, the district court likewise noted that "it appears that the judgment is an asset of the receivership" and "under Utah law, an exclusive procedure is provided by which a creditor may claim against the assets of a failed financial institution."

Defendants' present claims, however, are not premised on assignment and subrogation. They are instead based on the net recovery credit provided in section 7(c) of the bonds. Thus, even assuming exclusive state jurisdiction in the receivership proceedings over subrogation and assignment claims, the federal district court retains jurisdiction over its judgment for the assertion of the section 7(c) bond rights. Further, even if the judgment, once final, is deemed a general asset of the receivership, the district court retains jurisdiction to reopen the federal judgment under the circumstances outlined in Rule 60(b) when necessary to accomplish justice. Therefore, to the extent the district court denied Defendants' second Rule 60(b) motion on the ground that it was without jurisdiction, this was an abuse of discretion. *See LSLJ Partnership v. Frito-Lay, Inc.*, 920 F.2d 476, 479 (7th Cir. 1990) (noting district court "may abuse its discretion by failing to exercise its discretion," as when district court erroneously concludes it is without jurisdiction to consider Rule 60(b) motion on the merits).

FDIC primarily relies on its assertions that the issues raised in Defendants' Rule 60(b) motions were litigated and decided at trial. As discussed above, however, these issues were not decided at trial. Instead, the question of a credit based on post-trial liquidation of collateral was precluded from consideration at trial by the district court's pre-trial order.

Further, the FDIC is not entitled to recover twice for the same loss, once from Defendants and once from the liquidated collateral. Thus, assuming the FDIC has partially or fully recovered on the loss covered by the bonds from its post-trial liquidation of the remaining collateral, Defendants are not only entitled to a credit pursuant to section 7(c) of the bonds, but such a credit is necessary to avoid a double recovery by the FDIC.[5] In this court's prior opinion discussing whether the FDIC's net recovery from the Lowe settlement should be applied as a credit against the judgment, we noted that "'[i]t is a fundamental legal principle that an injured party is ordinarily entitled to only one satisfaction for each

_____

[5]Defendants have persistently maintained that the FDIC has obtained a "double recovery" for its loss on the Hartwell loan. The FDIC disputes this and asserts that the accounting which it provided to Defendants was only a "partial accounting of the disposition of some of the collateral which secured the Hartwell loan" and does not show that the FDIC has received a double recovery or has recovered all of its losses. The FDIC further asserted at oral argument in this appeal that it remains exposed to suits by a number of the investors. The FDIC also apparently disputes Defendants' contention that all the Hartwell loan collateral has now been liquidated. This court expresses no opinion as to whether the FDIC has actually recovered in full or in part on the Hartwell loan loss from its post-trial liquidation of the collateral.

injury.'" *United Pac. Ins. Co.*, 20 F.3d at 1082 (quoting *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1236 (10th Cir. 1988)).

Similarly, in this situation, if the FDIC has recovered its loss on the loan from the loan collateral, the FDIC is not entitled to a double recovery from both the collateral and the fidelity insurers merely because all the collateral was not liquidated at the time of trial. Such a double recovery constitutes extraordinary circumstances which justify relief from judgment. Although a district court has substantial discretion to deny a Rule 60(b) motion, "a district court does not have discretion to require two satisfactions." *Sunderland v. City of Phila.*, 575 F.2d 1089, 1090 (3d Cir. 1978); *see also Johnson Waste Materials v. Marshall*, 611 F.2d 593, 599 (5th Cir. 1980) (noting that when there is "practically conclusive evidence" that judgment has been satisfied, judgment should be set aside to prevent a "windfall" and "manifest miscarriage of justice" (internal quotations and emphasis omitted)).

Because no reason appears from the record why Defendants' Rule 60(b) motions should not have been granted, this court remands to the district court to determine whether the FDIC has obtained a recovery from the remaining loan collateral that either partially or fully compensates the FDIC for its loss under the Hartwell loan and to grant or deny Defendants relief from the judgment accordingly.

## B. Remand Proceedings Concerning Lowe Settlement

Defendants next argue that in the proceedings on remand relating to proof of the FDIC's net recovery from the Lowe settlement they were denied a meaningful opportunity to respond to the FDIC's evidence and were thus denied due process. Defendants specifically assert the district court improperly permitted the FDIC to offer into evidence the affidavits of its counsel as to the attorney fees incurred by the FDIC in settling the Lowe malpractice suit, without allowing Defendants to take any discovery or to cross-examine the affiants. Defendants also contend the district court improperly allowed the FDIC to produce only summary bills for its legal services and prevented further examination into the bills based on the FDIC's assertion of attorney-client privilege. Defendants finally assert they were improperly denied the opportunity to examine the FDIC's witnesses concerning the administrative expenses incurred by the FDIC in settling the Lowe case.

Although a district court is required on remand to conduct proceedings consistent with the appellate court's mandate, a district court has broad discretion in determining the procedure to be followed. It is within the district court's discretion to determine what means would afford the parties an adequate opportunity to present and object to evidence, including whether to allow limited discovery and cross-examination of witnesses. *Cf. Krell v. Prudential Ins. Co. of*

*Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, Nos. 97-5155, 97-5156, 97-5217, 97-5312, 1998 WL 409156, at \*53 (3d Cir. July 23, 1998). In this case, however, the district court's blanket denial of Defendants' requests for discovery and cross-examination did not afford Defendants an adequate opportunity to evaluate and object to evidence presented by the FDIC and the denial thus constituted an abuse of the district court's discretion.

We note that, while the procedure followed on remand was inadequate, Defendants are not entitled to a mini-trial on the issue of the attorney fees and administrative expenses incurred by the FDIC. The determination of the FDIC's legal fees and expenses should not result in a second major litigation. The district court is also not required to allow Defendants to relitigate issues already raised and resolved under the guise of determining the net recovery from the Lowe settlement. Under section 7(c) of the bonds, Defendants are only entitled to reimbursement from the FDIC's net recoveries from third parties. Because Defendants chose to rely on their rights under section 7(c) rather than pursuing their assignment and subrogation rights under the bonds and attempting to obtain their own recovery from third parties, Defendants were able to avoid incurring their own legal and administrative expenses and were also able to avoid the risk of loss in pursuing such recoveries. In relying on section 7(c), Defendants are therefore required to accept the FDIC's deductions from the Lowe recovery for its

legal fees and administrative expenses, so long as such fees and expenses are reasonable.

This court remands to the district court to structure the procedure for determining the FDIC's legal fees and expenses so that Defendants can make some reasonable inquiry into the nature of and reasonableness of the costs incurred by the FDIC in settling the Lowe malpractice suit.[6]

### III. CONCLUSION

This court **REVERSES** and **REMANDS** for the district court to determine whether Defendants are entitled to relief from the judgment due to the FDIC's

---

[6]In rejecting Defendants' request that the FDIC produce more detailed billing information, the district court apparently accepted the FDIC's assertion that such information was protected from disclosure because it contained "descriptions of work performed that the FDIC regards as privileged attorney/client communications." Based on the record before us, this court is unable to address the merits of the FDIC's claim of attorney-client privilege.

The party seeking to invoke the attorney-client privilege has the burden of establishing its applicability. *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995). To satisfy this burden, it is insufficient for the FDIC merely to contend that documents contain privileged information. *See, e.g., Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985); *Durokee Co. v. United States (In re Grand Jury Subpoena)*, 697 F.2d 277, 279-80 (10th Cir. 1983). Therefore, on remand, the FDIC must make a more substantial showing to invoke the attorney-client privilege and avoid production of the records at issue. In determining whether the relevant billing records contain privileged communications, the district court may adopt procedures, such as *in camera* review of allegedly privileged documents, to protect against disclosure of privileged communications. The district court may not, however, impose a blanket prohibition on discovery of more detailed statements or records based on the FDIC's bare assertion that such records contain privileged communications.

-25-

post-trial liquidation of collateral on the Hartwell loan and to structure fair

procedures for the determination of the FDIC's legal and administrative expenses

incurred in obtaining its recoveries from third parties. As this court noted in our

prior opinion, the applicable portion of the Lowe settlement proceeds[7] and the

FDIC's net recovery from the liquidated collateral must first reduce the FDIC's

total loss before these proceeds are applied to reduce the judgment against

Defendants.[8]

---

[7]If necessary, the district court must also determine on remand to what extent the judgment and the FDIC's net recovery from the Lowe settlement represent common damages.

[8]Defendants also argue the district court improperly granted the FDIC's motion under Federal Rule of Civil Procedure 60(a) to amend the final judgment to award the FDIC postjudgment interest on the entire amount of the judgment, including prejudgment interest and costs. Defendants assert that although a district court has discretion to impose postjudgment interest on prejudgment interest, there is no indication in the record here that the district court so intended. This circuit has recognized, however, that postjudgment interest awarded under 28 U.S.C. § 1961(a) applies to the entire award granted by the district court, including any prejudgment interest and costs. *See Bancamerica Commercial Corp. v. Mosher Steel of Kansas, Inc.*, 103 F.3d 80, 82 (10th Cir. 1996); *Wheeler v. John Deere Co.*, 986 F.2d 413, 415 (10th Cir. 1993); *see also Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) ("[I]t is well-established in other circuits that postjudgment interest also applies to the prejudgment interest component of a district court's monetary judgment."). Therefore, should the district court conclude on remand that the FDIC is entitled to postjudgment interest on the judgment pursuant to 28 U.S.C. § 1961(a), that interest would apply to the entire judgment, including any award of prejudgment interest and costs.