F I L E D
United States Court of Appeals
Tenth Circuit

OCT 31 2000

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

AMOCO OIL COMPANY,

Plaintiff - Appellant,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

Defendant - Appellee.

No. 99-1534

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 96-N-1037)

---

John D. Fognani (Craig V. Richardson, Jonathan M. Fingeret, and Christopher J.
Neumann, with him on the briefs), Zevnik, Horton, Guibord, McGovern, Palmer
& Fognani, LLP, Denver, Colorado, for Plaintiff-Appellant.

Ellen J. Durkee, Attorney, Department of Justice, Environment & Natural
Resources Division, Washington, DC (Lois J. Schiffer, Assistant Attorney
General; Lisa E. Jones, David A. Carson, and Joan M. Pepin, Attorneys,
Department of Justice, Washington, DC; Charles L. Figur, Of Counsel, United
States Environmental Protection Agency - Region VIII, Denver, Colorado; and
Mary E. Gleaves, Office of General Counsel, United States Environmental
Protection Agency, Washington, DC, on the brief), for Defendant-Appellee.

---

Before **TACHA**, **McWILLIAMS**, and **MURPHY**, Circuit Judges.

---

**TACHA**, Circuit Judge.

The Plaintiff Amoco Oil Co. appeals the district court's refusal to vacate a dismissal order under Federal Rule of Civil Procedure 60(b). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Procedural History

In 1996, EPA issued a Final Administrative Order (FAO) under section 3008(h) of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6928(h), imposing duties and obligations on Amoco regarding Amoco's former refinery and associated properties in Casper, Wyoming. After exhausting administrative remedies, Amoco challenged the validity of the FAO in the United States District Court for the District of Colorado. The district court granted EPA's motion to dismiss for lack of subject matter jurisdiction and entered final judgment. Amoco appealed but, before oral argument, EPA withdrew the FAO without prejudice. Both parties agreed that EPA's withdrawal of the FAO mooted the case on appeal. This court then dismissed the appeal as moot and remanded the case to the district court for further examination of the facts surrounding EPA's withdrawal of the FAO and for a determination of whether vacatur of the district court's dismissal order is the proper remedy under these circumstances. On remand, the district court concluded the facts do not support the equitable remedy of vacatur.

## II. Background

The facts of this case are closely connected with events that occurred as a result of a separate action brought under RCRA. In 1996, residents of Casper, Wyoming filed a class action and RCRA citizen suit against Amoco in the United States District Court for the District of Wyoming. In 1998, the district court awarded the plaintiffs a preliminary injunction, requiring Amoco to perform certain investigative, monitoring, and interim cleanup activities at its former Casper facility and other sites. Wilson v. Amoco Corp., 989 F. Supp. 1159 (D. Wyo. 1998). Although EPA was never a party to this action, it became involved in the litigation, providing expert testimony at the preliminary injunction hearing and serving as an informal technical advisor to the district court.

After EPA issued the FAO in the case at issue, it authorized the Wyoming Department of Environmental Quality (WDEQ) to implement federal hazardous waste programs in the State of Wyoming and informally delegated lead regulatory agency responsibility for several off-site areas near the Casper facility to WDEQ. WDEQ then intervened in the Wyoming citizen suit. Around this time, the parties to the Wyoming lawsuit began settlement negotiations. EPA continued to play a significant role; the district court judge again asked for EPA's assistance, requesting EPA's views on Amoco's settlement proposal. Throughout the settlement negotiations, EPA continued its involvement, providing the court and

the parties with detailed comments on proposed consent decrees. Moreover, as part of the settlement between Amoco and WDEQ, EPA agreed to transfer lead regulatory authority of the correction action requirements for the Casper facility to WDEQ, provided certain conditions were met.

The case at issue arises specifically out of facts surrounding an agreement between Amoco and EPA during the settlement negotiations in the Wyoming case. As a condition of its settlement of the Wyoming case, Amoco insisted that EPA withdraw the FAO. After EPA decided that the proposed consent decree between Amoco and WDEQ would be an effective substitute for the FAO, EPA agreed to this condition, and the proposed decree contained the parties' agreement that the decree serve as a replacement for the FAO. The proposed decree also stated it would become effective only after EPA vacated the FAO.[1]

On October 13, 1998, EPA formally withdrew the FAO without prejudice. In the order withdrawing the FAO, EPA reserved its right to reinstate the FAO in the event a court of competent jurisdiction finds the consent decree invalid or the State of Wyoming cannot implement the federal hazardous waste program. Under this order, EPA's right to reinstate also terminates upon successful completion of the consent decree's terms. Concluding the withdrawal order satisfied the only

---

[1] Despite the inclusion of the term "vacate" in the consent decree, the district court concluded the parties intended to withdraw rather than vacate the FAO. See infra note 2.

-4-

remaining condition, the Wyoming district court entered an order finding the consent decree effective as of October 13, 1998, the date of EPA's withdrawal order.

Shortly after EPA's withdrawal of the FAO, Amoco and EPA notified this court that Amoco's appeal of the Colorado district court's dismissal in this case had become moot. Amoco asked that we vacate the district court's dismissal order. We dismissed the appeal as moot and remanded to the district court for a determination of whether mootness resulted from a settlement between the parties or the unilateral action of EPA, the party who prevailed in the district court. We also asked the district court to determine whether vacatur is proper. The district court concluded a settlement between the parties, rather than the unilateral action of EPA, rendered the action moot and declined to vacate the dismissal order. Amoco appeals this decision, arguing EPA's unilateral action rendered the case moot and unjustly foreclosed Amoco's opportunity to appeal the decision.

### III. Standard of Review

On remand, a district court may consider a request for vacatur pursuant to Federal Rule of Civil Procedure 60(b). U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 29 (1994) (stating a court of appeals may remand a request for vacatur of a district court judgment pursuant to Rule 60(b)). We have routinely reviewed a district court's denial of a Rule 60(b) motion for abuse of

discretion.  Servants of the Paraclete v. Does 1-XVI, 204 F.3d 1005, 1009 (10th Cir. 2000) (citing FDIC v. United Pac. Ins. Co., 152 F.3d 1266, 1272 (10th Cir. 1998)); Stubblefield v. Windsor Capital Group, 74 F.3d 990, 994 (10th Cir. 1996); FDIC v. Oldenburg, 38 F.3d 1119, 1122-23 (10th Cir. 1994) (reviewing Rule 60(b) motion to vacate judgment under abuse of discretion standard) .  We have applied de novo review in this context only in cases of Rule 60(b)(4) motions challenging the validity of the underlying judgment, a situation inapplicable to the case at issue.  Wilmer v. Board of County Comm'rs, 69 F.3d 406, 409 (10th Cir. 1995) (noting we review de novo a district court's decision regarding whether judgment is void under Rule 60(b)(4) for lack of jurisdiction (citing King Fisher Marine Serv., Inc. v. 21st Phoenix Corp., 893 F.2d 1155, 1158 (10th Cir. (1990))).

In reviewing the district court's decision to deny relief, we typically review only the order of denial and not the underlying judgment.  Stubblefield, 74 F.3d at 994.  But see V.T.A. Inc. v. Airco, Inc., 597 F.2d 220, 223-24 & n.8 (10th Cir. 1979) (noting review of the underlying decision is necessary when the judgment is challenged as void under Rule 60(b)(4)).  This court has recognized that a district court "has substantial discretion to grant relief as justice requires under Rule 60(b)." United Pac. Ins. Co., 152 F.3d at 1272; accord Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990).  But such relief "is extraordinary

and may only be granted in exceptional circumstances." Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., 909 F.2d 1437, 1440 (10th Cir. 1990).  In light of the district court's broad grant of equitable power, we must determine only if a "definite, clear or unmistakable error occurred below."  Pelican Prod. Corp., 893 F.2d at 1147.  Accordingly, our review is "'meaningfully narrower' than review of the merits of a direct appeal."  Lindberg v. United States, 164 F.3d 1312, 1322 (10th Cir. 1999) (quoting Bud Brooks Trucking, Inc., 909 F.2d at 1440)).  Under the law of this circuit, "judicial action which is arbitrary, capricious, or whimsical" constitutes an abuse of discretion.  Pelican Prod. Corp., 893 F.2d at 1146.  A  ruling based on "'an erroneous view of the law or on a clearly erroneous assessment of the evidence'" would constitute an abuse of discretion. United Pac. Ins. Co., 152 F.3d at 1272 (quoting Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 727 (10th Cir. 1993)).

## IV.  Vacatur

**A.      Whether Mootness Was a Result of Unilateral Action or Settlement**

In U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18 (1994), the Supreme Court explicitly ruled that "mootness by reason of settlement does not justify vacatur of a judgment under review."  Id. at 29.  The facts of Bancorp closely parallel the facts of the case at issue: in Bancorp, the parties agreed that a reorganization plan constituted a settlement mooting the case on

appeal and requested that the appellate court (specifically, the Supreme Court) vacate the lower court's judgment. Id. at 20. Under Bancorp, an appellate court must vacate a prior judgment only if review of the judgment is "'prevented through happenstance,'" id. at 22-23 (quoting United States v. Munsingwear, Inc., 340 U.S. 36, 40 (1950)), or if "mootness results from the unilateral action of the party who prevailed in the lower court," id. The Court emphasized that the primary inquiry in these cases has been "whether the party seeking relief from the judgment below caused the mootness by *voluntary action*." Id. at 24 (emphasis added). The circumstances under which a court must vacate a judgment—whether happenstance or a party's unilateral action—reflect the remedy's equitable nature. Accordingly, after voluntarily agreeing to a settlement that renders the case moot, the losing party forfeits the legal remedy of appeal and is no longer entitled to the equitable remedy of vacatur in the absence of exceptional equitable circumstances. Id. at 25.

We have applied the Bancorp approach in several cases. Following this approach, we have both granted and denied requests for vacatur. For examples of cases in which we have granted vacatur, see United States v. Jenks, 129 F.3d 1348, 1352 (10th Cir. 1997) (vacating district court judgment because prevailing party's unilateral action rendered case moot); McClendon v. City of Albuquerque, 100 F.3d 863, 868 (10th Cir. 1996) (granting request for vacatur of judgment even

-8-

though losing party mooted appeal through its own actions because government's remedial measures mooting the appeal constituted responsible governmental conduct and not manipulation of the judicial process); Jones v. Temmer, 57 F.3d 921, 923 (10th Cir.1995) (granting vacatur because change in law caused mootness) (citing Munsingwear, Inc., 340 U.S. at 39-40, for rule that vacatur is appropriate when happenstance prevents appellate review)). For examples of cases in which we have denied requests for vacatur, see Western Pac. Airlines, Inc. v. Smith Management, 181 F.3d 1191, 1197-98 (10th Cir. 1999) (denying request for vacatur because appellants voluntarily contributed to the mootness of the appeal); 19 Solid Waste Dep't Mechanics v. City of Albuquerque, 76 F.3d 1142, 1144-45 (10th Cir.1996) (denying city's request for vacatur because city rendered case moot by voluntarily withdrawing the policy invalidated by the district court). See also City of Albuquerque v. Browner, 97 F.3d 415, 421 (10th Cir. 1996) (citing Bancorp's holding that "mootness by reason of settlement does not justify vacatur of a federal civil judgment under review absent exceptional, equitable circumstances").

The primary question for the district court on remand was whether EPA's withdrawal of the FAO was a unilateral action by EPA or part of a settlement agreement between EPA and Amoco. We agree with the district court's conclusion that Amoco's characterization of EPA's action as unilateral is

unsupported by the facts. Amoco asserts that, in withdrawing the order without prejudice rather than vacating it, EPA acted unilaterally, but the record contains correspondence between EPA, WDEQ, Amoco, and the Wyoming district court judge revealing an understanding among the parties that the finalization of the consent decree was contingent upon the withdrawal of the FAO. These letters show that EPA remained intimately involved in the consent decree negotiations because the parties intended to reach a settlement that would serve as an "alternative mechanism" to the FAO. In fact, in the final months of negotiation, Amoco sent EPA a letter in which Amoco recognized that entry of the consent decree was contingent on EPA's *withdrawal* of the FAO. In addition, the district court in the Wyoming case concluded EPA's withdrawal order satisfied the requirements of the consent decree, which Amoco accepted. If Amoco disagreed with the judge's conclusion, it should have raised that argument in the Wyoming court.[2] We therefore conclude the district court did not abuse its discretion in finding the withdrawal of the FAO occurred as a result of a settlement between the parties.

---

[2] Moreover, in its brief, Amoco noted that EPA rejected proposed language requiring final resolution of all prior claims under the FAO before entry of the consent decree. In other words, Amoco recognized that EPA did not intend to vacate the FAO. The inclusion of the term "vacate" in the consent decree does not therefore reflect the intent of the parties. The record contains sufficient evidence to support the district court's finding that the FAO's withdrawal was a direct result of an agreement between Amoco and EPA.

Furthermore, Amoco's argument that <u>Bancorp</u> requires the settlement mooting the case to occur in the same litigation is without merit. In <u>Bancorp</u>, although the parties' settlement happened to occur in the same litigation, the Supreme Court did not define settlement so narrowly but instead stressed that the principle question is whether *voluntary* action by the party seeking relief caused the mootness. <u>Bancorp</u>, 513 U.S. at 24. As the district court recognized, Amoco sought EPA's withdrawal of the order as a condition of entering into the consent decree; Amoco therefore voluntarily participated in a settlement process that ultimately mooted the case on appeal. Moreover, in addition to not challenging the withdrawal order in the Wyoming district court, Amoco also chose not to pursue its original appeal of the Colorado district court's dismissal order in this case, arguing instead that, although the appeal was moot, we should vacate the district court's dismissal order. In previous cases, we have considered a party's litigation strategy in deciding whether that party voluntarily contributed to the mootness of a case for purposes of vacatur. <u>See, e.g.</u>, <u>Western Pac. Airlines, Inc.</u>, 181 F.3d at 1198 (denying request for vacatur in part because appellants failed to seek a stay of a post-petition financing order); <u>19 Solid Waste Dep't Mechanics</u>, 76 F.3d at 1144-45 (denying request for vacatur because city caused mootness by voluntarily withdrawing the policy the district court had found invalid). As the Supreme Court noted in <u>Bancorp</u>, "'a suitor's conduct in relation to the matter at

-11-

hand may disentitle him to the relief he seeks.'" 513 U.S. at 25 (quoting Sanders v. United States, 373 U.S. 1, 17 (1963)). Amoco may not now seek relief based on the unfavorable results of its own litigation strategy.

**B.      Equitable Factors: Public Interest and Prejudice**

Because vacatur is an equitable remedy, we must also consider the public interest. Bancorp, 513 U.S. at 26. The Supreme Court thoroughly addressed this issue in Bancorp, recognizing the appeal as of right and certiorari as the primary means by which parties should seek relief from judicial judgments and noting that allowing vacatur to serve as a secondary remedy enables a collateral attack on the judgment that would "disturb the orderly operation of the federal judicial system." Id. at 27. We have also recognized that granting vacatur to a party who both causes mootness and pursues dismissal based on mootness serves only the interests of that party. 19 Solid Waste Dep't Mechanics, 76 F.3d at 1145. Granting vacatur under these circumstances amounts to a de facto reversal of an abandoned claim and encourages parties with unfavorable judgments to file an appeal, comply with the judgment, and then request the judgment be vacated. See id.

In addition, Amoco argues that the district court should have granted its request for vacatur because Amoco could be prejudiced in the event EPA reinstates the order and Amoco is precluded from challenging the order under

principles of res judicata and collateral estoppel. As the facts demonstrate and the district court acknowledged, this possibility is far too speculative: EPA may reinstate the order only if a court finds the consent decree invalid or if WDEQ becomes unable to implement the federal hazardous waste program. In 19 Solid Waste Department Mechanics, we responded to a similar argument regarding prejudice by noting the argument seemed more like an argument against mootness. 76 F.3d at 1145. If Amoco truly feared it would be prejudiced, it should have argued on its previous appeal that EPA's withdrawal of the FAO did not moot its appeal of the district court's dismissal order.

We conclude the district court did not abuse its discretion in finding mootness occurred as a result of a settlement between the parties, and Amoco has failed to prove the existence of exceptional equitable circumstances supporting the remedy of vacatur. We therefore AFFIRM the district court's judgment.