**In re RAFTER SEVEN RANCHES L.P., Debtor.**

**Rafter Seven Ranches L.P., Appellant,**

v.

**WNL Investments L.L.C. and Duane Koster, Appellees.**

**In re Rafter Seven Ranches L.P., Debtor.**

**Rafter Seven Ranches L.P., Appellant,**

v.

**WNL Investments, L.L.C. and Duane Koster, Appellees.**

BAP Nos. KS–08–070, KS–08–071.
Bankruptcy No. 05–40483.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Sept. 17, 2009.

William E. Metcalf, Topeka, KS, for Appellant.

Timothy H. Girard, Woner, Glenn, Reeder, Girard & Riordan, P.A., Topeka, KS, for Appellee WNL Investments, L.L.C.

Robert L. Baer, Cosgrove, Webb and Oman, Topeka, KS, for Appellee Duane Koster.

Before BROWN, THURMAN, and ROMERO, Bankruptcy Judges.

BROWN, Bankruptcy Judge.

Debtor–Appellant, Rafter Seven Ranches L.P. ("Debtor") appeals two orders of the bankruptcy court. First, Debtor appeals the court's refusal to award Debtor damages for alleged violations of the automatic stay by Appellees WNL Investment, L.L.C. ("WNL") and Duane Koster ("Koster"). For the reasons set forth below, we affirm the bankruptcy court's ruling that Debtor is not entitled to damages under either 11 U.S.C. § 362 or § 105. Debtor also appeals the bankruptcy court's grant of WNL's motion to enforce a settlement agreement between the parties. We dismiss Debtor's appeal of that order as moot.

## I. Background

This is the second appeal before this Court involving a court-approved settlement agreement between Debtor and WNL. That settlement agreement concerns three tracts of farmland located in Finney County, Kansas, referred to as "Tracts 1, 2 and 3." The land was formerly owned by Debtor and two trusts controlled by Debtor's majority owner and general partner, Michael Friesen. When Debtor and the trusts failed to pay real property taxes on the Tracts, tax foreclosure proceedings were initiated. WNL stepped in and purchased the Tracts and then leased them back to Debtor and the trusts, with an option to repurchase. When Debtor and the trusts failed to make the required lease payments, WNL issued a notice of default. To counter this move, the Debtor and the trusts filed Declarations of Equitable Interest with the Finney County recorder. WNL brought suit to quiet title. In response, the trusts abandoned their claims of interest in the properties, but Debtor filed a Chapter 12 petition on March 7, 2005.[1] WNL moved for relief from the automatic stay to proceed against the properties.

The parties ultimately reached a settlement agreement. In general terms, their agreement provided that WNL would be deemed the "absolute owner" of all three Tracts, and Debtor would pay WNL $240,000 on or before July 15, 2006. If WNL received timely payment in full, it would deed all three Tracts back to Debtor, free and clear of any claims. If the Debtor defaulted on the settlement obligation, then WNL was authorized to sell as much of the property as necessary to recoup full payment. The agreement was embodied in a Stipulated and Agreed Order Approving Settlement Involving Rafter Seven Ranches, LP and WNL Investments, L.L.C. (the "Stipulated Order"), and a separate settlement agreement (collectively referred to as the "Agreement"). The bankruptcy court approved the Agree-

---

1. Debtor filed for bankruptcy before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) became effective. All future references to "Section," "§ ," or "Code" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (2004), unless otherwise specified.

ment. At that time, Judge Somers presided over Debtor's bankruptcy case.

As relevant to this appeal, the Agreement provided that:

[t]he parties acknowledge and agree as of the date of their stipulation and agreement, January 10, 2006, that WNL is and shall be the absolute owner of all legal and equitable title and interest in [the three Tracts]. The debtor, the trusts, and Friesen shall not do anything to cause any lien or encumbrance on the Real Estate.[2]

The Agreement also stated in paragraph 5(e) (hereinafter "¶ 5(e)") that if WNL ended up selling the Tracts, "[a]ll farm income generated from the Real Estate from and after January 11, 2006 shall be and is the sole and exclusive property of the debtor."[3] When Debtor failed to meet its payment obligation by July 15, 2006, WNL proceeded to advertise Tract 1 for sale. In September 2006, Koster purchased Tract 1 at auction for $113,600. WNL then placed advertisements announcing the auction of the other two Tracts, to be held on October 31, 2006.

On October 23, 2006, Debtor filed a "Motion to Interpret the Agreement," which objected to WNL's proposed auction of Tracts 2 and 3 on the same day. Two days later, the bankruptcy court conducted an emergency hearing, during which the court orally denied Debtor's motion on the record. Debtor did not immediately appeal the bankruptcy court's oral ruling and so the auction proceeded as advertised on October 31. Koster was the successful bidder on both Tracts 2 and 3. The sale of Tract 2 eventually closed, but the sale of Tract 3 did not, for reasons discussed below. After the sale of Tracts 1 and 2, the Debtor still owed WNL approximately $48,000 toward the agreed settlement amount.

Immediately following the auction, Koster requested permission from WNL to commence farming operations on Tract 3, even though the sale had not officially closed. WNL granted permission and Koster, through Southwest Agriculture ("Southwest Ag"), a partnership in which Koster holds a one-seventh partnership interest, began farming Tract 3. Southwest Ag completed planting a wheat crop on Tract 3 in November 2006 (to be harvested in summer of 2007). Friesen was aware at the time that Tract 3 had been planted, but did not object at that time.[4]

On November 14, 2006, nearly three weeks after its oral ruling, the bankruptcy court entered a written order denying the Debtor's Motion to Interpret the Agreement. Debtor timely filed a motion to reconsider, which both WNL and Koster opposed. The bankruptcy court denied Debtor's reconsideration motion as well, and on December 27, 2006, Debtor filed its first notice of appeal to this Court. No party obtained a stay pending appeal. Nevertheless, WNL and Koster chose not to close the sale of Tract 3 due to the appeal. In the summer of 2007, while the first appeal was pending, Southwestern Ag proceeded to harvest the 2007 wheat crop on Tract 3. Again, Friesen was aware of the harvest, and even investigated who was working on Tract 3 because he believed Debtor had a right to the crop income, but voiced no objection at that time.[5] Debtor contends it withheld comment at that time because this Court had not yet

---

**2.** *Stipulated Order* at 5, ¶ 5(a), *in* Appellant's Appendix ("Appellant Appx."), Vol. I at 109.

**3.** *Id.* at 7, ¶ 5(e), *in* Appellant Appx. Vol. I at 111.

**4.** *January 4, 2008, Transcript of Deposition of Michael J. Friesen ("Tr.").* at 24, *ll.* 21–24, *in* Appellant Appx. Vol. III at 439.

**5.** *Tr.* at 106, *ll.* 1–4, *in* Appellant Appx. Vol. III at 459.

issued an opinion as to whether the Agreement permitted a stacked sale of Tracts 2 and 3 on the same day.

This Court issued its opinion in the first appeal on September 12, 2007. The opinion held that the sales of Tracts 2 and 3 should have occurred at least one day apart. Shortly after issuance of this Court's opinion, the bankruptcy court set a status conference for October 22, 2007, to determine the impact of this Court's opinion and ordered the parties to meet and confer concerning any remaining issues. Neither Debtor nor its counsel conferred with WNL or Koster concerning an alleged stay violation. Instead, on the Sunday night before the scheduled status conference, Debtor filed its Motion for Actual Damages, Attorney Fees, Costs and Punitive Damages Against Respondents for Violation of the Stay (as later amended, "Motion for Damages").[6] The Motion for Damages asserted, for the first time, that WNL and Koster violated the stay by harvesting and selling the 2007 wheat crop from Tract 3, which Debtor claimed to be property of the estate. As a remedy, Debtor sought turnover of 100% of the gross income from the wheat crop, as well as attendant actual and punitive damages, attorney's fees and costs. In the alternative, Debtor sought an equitable order imposing sanctions under § 105. Debtor represented to the bankruptcy court that Debtor intended to use any damages awarded "to fund the purchase of Tract 3, and to then farm Tract 3 to fund a plan."[7]

The next day, October 22, 2007, Friesen sent a letter directly to Judge Somers, later docketed, asking Judge Somers to recuse himself from both the Debtor's and Mr. Friesen's bankruptcy cases, due to alleged bias.[8] Judge Somers subsequently issued an order which found the letter procedurally deficient as a motion to disqualify and unlikely to succeed on the merits, but nevertheless returned the case to the clerk for reassignment to avoid further delays in the case.[9] The court clerk assigned Judge Karlin to Debtor's case shortly thereafter.

A week later, on October 29, 2007, Friesen, on behalf of Debtor, filed a Notice of Suit Re: [Tract 3] with the Register of Deeds of Finney County. The Notice of Suit stated that "[a]n additional action was filed in the Kansas Bankruptcy Court on October 22, 2007 seeking redress for violations of [the Agreement]. Failure to account and comply may deprive Rafter Seven Ranches, LP from purchasing said property and, as such, may constitute an actual or equitable lien on this property."[10] Mr. Friesen testified in his deposition that he filed the Notice of Suit essentially to cloud title on Tract 3,[11] although Debtor now disputes such intent in this appeal. In response, WNL filed its Motion to Enforce Settlement Agreement, arguing Debtor's filing of the Notice of Suit violated the Agreement.[12]

After the parties filed cross-motions for summary judgment seeking resolution of

---

**6.** *In re Rafter Seven Ranches, LP,* No. 05–40483, 2008 WL 2783278, at *6 n. 39 (Bankr. D.Kan. July 15, 2008). The bankruptcy court took judicial notice of the date and time that Debtor electronically filed its Motion for Damages; 9:42 p.m. on October 21, 2007 (a Sunday). *Id.* at *6.

**7.** *Id.* at *3 n. 25.

**8.** *October 22, 2007, Letter, in* Appellant Appx. Vol. I at 137.

**9.** *Order Returning Cases to Clerk for Reassignment, in* Appellant Appx. Vol. I at 138–39.

**10.** *Notice of Suit Re: [Tract 3]* at ¶ 2, *in* Appellant App. Vol. II at 343.

**11.** *Tr.* at 116, *ll.* 6–23, in Appellant Appx. Vol. III at 462.

**12.** *Motion to Enforce Settlement Agreement, in* Appellant's App. Vol. II at 339–42.

the Motion for Damages, the bankruptcy court determined that an evidentiary hearing was necessary on two very limited issues about which there was a possible genuine issue of material fact: (1) the meaning of 15(e) concerning Debtor's right to income from the Tracts, and (2) whether there was any net income received from the 2007 crop on Tract 3. Prior to holding the hearing, the parties agreed to a scheduling order and conducted discovery. Disputes arose at the pretrial conference concerning Debtor's request to extend discovery deadlines and to amend its Motion for Damages to add additional claims (relating to the 2008 crop) and additional parties. The bankruptcy court denied both requests in its pretrial order. At the July 9, 2008, evidentiary hearing, the bankruptcy court heard the testimony of Friesen and representatives of WNL and Southwest Ag.

On July 15, 2008, the bankruptcy court entered its order granting summary judgment in favor of WNL and Koster and denying the Debtor's motion for summary judgment. After making extensive factual findings, the order first interpreted the Agreement. The bankruptcy court reviewed the applicable rules on contract interpretation, and then found ¶ 5(e) of the Agreement to be ambiguous when read in concert with the other provisions of the Agreement. The bankruptcy court then looked to the entire contract to see if the parties' intention could be ascertained from its four corners. The bankruptcy court concluded that the only reasonable interpretation of ¶ 5(e) was that Debtor was entitled to receive the net income from the wheat growing on each of Tracts 1, 2 and 3 (the 2006 crop) at the time the

Agreement was negotiated in January 2006, but nothing else.[13] The court found the interpretation suggested by Debtor to be absurd given the other provisions of the Agreement. Thus, even without resort to extrinsic evidence, the bankruptcy court determined that the Agreement did not give Debtor any right to income generated from the 2007 harvest or beyond and, as such, Koster's failure to turnover any profit it was not a violation of the stay. The bankruptcy court also concluded that WNL did not violate the stay by allowing Southwest Ag/Koster to farm the land, since WNL did not receive any profits from the harvest. The bankruptcy court went on to find that even if it did consider extrinsic evidence, that evidence supported its earlier interpretation of the Agreement.

Next, the bankruptcy court determined that even if there had been a stay violation, Debtor would not be entitled to damages under § 362(h).[14] That section, the bankruptcy court held, allows an *individual* injured by a willful violation of the stay to recover damages. Although some courts have held otherwise, the bankruptcy court determined that Debtor, a general partnership, was not an "individual" under § 362(h) and not entitled to recover damages. Finally, the bankruptcy court denied Debtor any relief under § 105, concluding the equities did not favor Debtor.

In its second order, the bankruptcy court granted WNL's motion to enforce the Agreement. The bankruptcy court noted that the Agreement clearly prohibited Debtor and Friesen from filing any lien or encumbrance on the Tracts of land. The bankruptcy court rejected Debtor's argument that the Notice of Suit merely

---

13. Because 2006 was a bad crop year, only one of the three Tracts was harvested. *In re Rafter Seven Ranches, LP,* No. 05–40483, 2008 WL 2783278, at *5 (Bankr.D.Kan. July 15, 2008). Debtor received approximately $1,800 for its interest in the 2006 crop revenue. *Id.*

14. BAPCPA renumbered the subsections of § 362 such that § 362(h) is now numbered § 362(k)(1).

served to put the public on notice and did not encumber the property. The court concluded that the Notice likely did or could well create a cloud on title to Tract 3 that would frustrate resale of the land. The court therefore ordered that the Notice be deemed invalid.

Following entry of the bankruptcy court's orders, Debtor filed its Notice of Appeal initiating this appeal. Shortly thereafter, Debtor asked the bankruptcy court to stay all proceedings in the bankruptcy case, pending resolution of the appeal.[15] The bankruptcy court denied Debtor's request for a stay.[16] After both Debtor–Appellant and the Appellees in this case filed their opening briefs, WNL scheduled an auction for November 19, 2008, to sell Tract 3.[17] Debtor participated in that auction and submitted the winning bid of $159,600 for Tract 3, a large portion of which was a credit bid.[18] In its Reply Brief, Debtor suggests its appeal of the bankruptcy court's second order enforcing the Agreement "may be moot" since Debtor now owns Tract 3, but then goes on to argue the merits.[19]

## II. Standard of Review

 A bankruptcy court's determination as to whether a party's actions have violated the automatic stay is a question of law which is reviewed de novo,[20] as is the determination whether property is included in the bankruptcy estate under § 541.[21] Interpretation of an unambiguous contract is a question of law and is subject to de novo review on appeal.[22] The initial determination of whether a contract is ambiguous is also a legal conclusion reviewed de novo.[23] "Once it is determined that a contract is ambiguous and that its construction depends on extrinsic circumstances, interpretation of the contract becomes a question of fact."[24] We review factual findings for clear error.[25] The applicable standard of review for orders granting summary judgment is de novo, and this Court is required to apply the same legal standard as was used by the bankruptcy court to determine whether either party is entitled to judgment as a matter of law.[26]

 A bankruptcy court's interpretation and application of the damages provision of § 362 is reviewed de novo.[27] A bankruptcy court's exercise of its equitable powers under § 105(a) is reviewed for abuse of discretion.[28] A bankruptcy

---

**15.** *Memorandum Opinion and Order Denying Motion for Stay, in* Supplemental Appendix of WNL at 211.

**16.** *Id.* at 211–230.

**17.** *Appellant's Reply Br.* at 1.

**18.** Under the Agreement, Debtor was to receive any sale proceeds from the three Tracts of land in excess of $240,000 (the amount owed to WNL).

**19.** *Appellant's Reply Br.* at 1–3.

**20.** *Diviney v. NationsBank of Tex. (In re Diviney),* 225 B.R. 762, 769 (10th Cir. BAP 1998).

**21.** *In re Parsons,* 280 F.3d 1185, 1188 (8th Cir.2002).

**22.** *Williamson v. Kay (In re Villa W. Assocs.),* 146 F.3d 798, 802 (10th Cir.1998); *Milk 'N'*

More, Inc. v. Beavert, 963 F.2d 1342, 1345 (10th Cir.1992).

**23.** *In re Kaiser Steel Corp.,* 998 F.2d 783, 789 (10th Cir.1993); *Teton Exploration Drilling, Inc. v. Bokum Res. Corp.,* 818 F.2d 1521, 1526 (10th Cir.1987).

**24.** *City of Farmington v. Amoco Gas Co.,* 777 F.2d 554, 560 (10th Cir.1985).

**25.** *Id.*

**26.** *Tillman ex rel. Estate of Tillman v. Camelot Music, Inc.,* 408 F.3d 1300, 1303 (10th Cir. 2005).

**27.** *In re Hayden,* 308 B.R. 428, 431 (9th Cir. BAP 2004).

**28.** *In re Crocker,* 362 B.R. 49, 53 (1st Cir. BAP 2007).

court's decision whether or not to modify a scheduling order is reviewed for abuse of discretion.[29] We review for abuse of discretion the specific issue of whether the bankruptcy court properly decided the case based on what was included in the pretrial order.[30]

## III. Discussion

Debtor's brief details multiple points of error. This rather unwieldy and somewhat repetitive list can be consolidated into five issues: (1) whether the bankruptcy court correctly concluded that Debtor is not an "individual" entitled to seek damages under § 362(h); (2) whether the bankruptcy court abused its discretion in finding Debtor was not entitled to equitable relief under § 105; (3) whether the bankruptcy court properly concluded no stay violation occurred; (4) other alleged procedural errors; and (5) whether the bankruptcy court correctly granted WNL's motion to enforce the Agreement. We conclude that the bankruptcy court correctly decided that Debtor is not an individual entitled to seek damages under § 362(h). In addition, the bankruptcy court committed no abuse of discretion in denying damages under § 105. In the alternative, we conclude that the bankruptcy court correctly determined that no stay violation occurred. To the extent the bankruptcy court committed any procedural errors, such errors were harmless. Finally, Debtor's appeal of the order enforcing the Agreement is moot.

### A. Debtor Is Not an "Individual" Under § 362(h)

Debtor argues the bankruptcy court erred in concluding that Debtor could not seek damages under § 362(h) because it is not an individual debtor. Section 362(h) provides:

> An *individual* injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.[31]

As noted by the bankruptcy court, there is a split of authority on whether the term "individual" includes only natural persons and not business entities. Five circuits have held that the term "individual" means a natural person and does not include corporations or other business entities.[32] Two circuits have held that "individual" includes corporate debtors.[33] The Tenth Circuit has not ruled on the issue, but at least two bankruptcy courts within this circuit have sided with the majority view.[34]

We agree with the reasoning of the majority position, which generally focuses on

**29.** *Columbia State Bank v. Daviscourt (In re Daviscourt)*, 353 B.R. 674, 681 (10th Cir. BAP 2006).

**30.** *In re Rafter Seven Ranches, L.P.*, 546 F.3d 1194, 1200 (10th Cir.2008).

**31.** 11 U.S.C. § 362(h) (2004) (emphasis added).

**32.** *Spookyworld v. Town of Berlin (In re Spookyworld, Inc.)*, 346 F.3d 1 (1st Cir.2003); *Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corporate Sys., Inc.)*, 108 F.3d 881 (8th Cir.1997); *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1549–53 (11th Cir.1996); *United States v. Arkison (In re Cascade Roads, Inc.)*, 34 F.3d 756, 766 (9th Cir.1994); *Maritime Asbestosis*

*Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 920 F.2d 183, 186–87 (2d Cir. 1990).

**33.** *In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 329 (3rd Cir.1990); *Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 292 (4th Cir.1986).

**34.** *Los Alamos Nat'l Bank v. Potter (In re Potter)*, Nos. 7–05–14071 & 05–1149, 2007 WL 2332137, at *2 (Bankr.D.N.M.2007); *Versar Architects & Eng'rs, Inc. v. Chem–Nuclear Geotech, Inc. (In re Versar Architects & Eng'rs, Inc.)*, 138 B.R. 620, 622 (Bankr.D.Colo.1992).

the "plain meaning" of § 362(h). As noted by courts adopting the majority view, the Bankruptcy Code uses the term "individual" in a manner distinct from a "person" or a "corporation." For example, the Code defines "person" to include "individual[s], partnership[s], and corporation[s]." [35] In addition, "corporation" is defined to include an "association having a power or privilege that a private corporation, but not an individual or a partnership, possesses." [36] Thus, "in defining 'person,' Congress used the word 'individual' to distinguish natural persons from corporations and partnerships. Other sections of the Bankruptcy Code either make the same distinction or use the word 'individual' in such a way that its only intended meaning could be a natural person." [37] This plain reading of § 362(h) does not prevent business entities from seeking other bankruptcy remedies for stay violations. [38]

In this case, Debtor is a partnership and not a natural person and is thus not entitled to an award of damages under § 362(h). Consequently, the bankruptcy court properly granted summary judgment in favor of WNL and Koster on Debtor's § 362(h) claim.

## B. Equitable Relief under § 105(a)

In its Motion for Damages, Debtor argued that if the bankruptcy court found Debtor was not entitled to damages under § 362(h), the bankruptcy court should award Debtor damages under § 105(a). The bankruptcy court rejected this argument, finding that relief under § 105(a) is discretionary and that Debtor had not done equity and deserved none from the court. On appeal, Debtor disputes the bankruptcy court's assessment of the evidence, specifically the manner in which the bankruptcy court characterized Debtor's motives and actions, and argues Debtor is entitled to equity.

 The Tenth Circuit has acknowledged a bankruptcy court's civil contempt power under § 105(a). [39] This power includes the ability to award monetary relief for automatic stay violations to the extent such awards are "necessary or appropriate" to carry out the provisions of the Bankruptcy Code. [40] Bankruptcy courts frequently invoke § 105(a) powers to award damages in situations involving non-individual debtors which are not covered by § 362(h). [41] As with § 362(h), courts considering sanctions for stay violations under § 105(a) usually require that the violation be "willful." [42] Even if a willful

---

35. 11 U.S.C. § 101(41).

36. 11 U.S.C. § 101(9)(A)(i).

37. *Jove Eng'g, Inc.*, 92 F.3d at 1551 (internal quotation marks omitted).

38. *Spookyworld v. Town of Berlin (In re Spookyworld, Inc.)*, 346 F.3d 1, 8 (1st Cir. 2003) (noting that corporations and other non-individuals remain free to petition bankruptcy courts to award damages for automatic stay violations pursuant to their § 105(a) power).

39. *In re Skinner*, 917 F.2d 444, 447 (10th Cir.1990).

40. *Id.*

41. *See, e.g., Jove Eng'g, Inc.*, 92 F.3d at 1554 ("We conclude § 105(a) grants courts inde-

pendent statutory powers to award monetary and other forms of relief for automatic stay violations to the extent such awards are 'necessary or appropriate' to carry out the provisions of the Bankruptcy Code."); *In re Pace*, 67 F.3d 187, 193 (9th Cir.1995) (damages in the form of costs and attorney's fees for willful violations that are not available to non-individual under § 362(h) are available under § 105(a) as a sanction for ordinary civil contempt); *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 920 F.2d 183, 187 (2d Cir.1990) ("For other debtors [who are not natural persons], contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay.").

42. *See In re Dyer*, 322 F.3d 1178, 1191 (9th Cir.2003); *Jove Eng'g, Inc.*, 92 F.3d at 1555.

violation is shown, however, the award of damages under § 105 is discretionary.[43] Accordingly, we review the bankruptcy court's exercise of its equitable powers under § 105(a) for abuse of discretion.[44] We review the underlying factual findings for clear error.[45]

■ The bankruptcy court's decision on the equities under § 105 is adequately supported by eleven specific factual findings concerning Debtor's conduct.[46] Debtor does not dispute the underlying conduct in these findings, but argues its conduct was motivated by honest intentions. Such arguments do not demonstrate an abuse of discretion or clear error.[47]

### C. No Automatic Stay Violation

■ In the alternative, we conclude that the bankruptcy court properly granted summary judgment because no stay violation occurred. Debtor alleges Appellees' failure to turnover 2007 crop proceeds violated § 362(a)(3), which provides that the filing of a bankruptcy petition operates as a stay, applicable to all entities, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Section 541 defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." The issue of what property interests are included in the estate under § 541 is a matter of federal bankruptcy law,[48] but the nature and extent of a debtor's property interests are determined by reference to state law.[49] In this case, the bankruptcy court correctly applied Kansas contract law to determine that Debtor's rights under the Agreement did not include the 2007 crop proceeds.

#### 1. Construction of the Agreement

■ In this case, the bankruptcy court determined that ¶ 5(e) of the Agreement was ambiguous, based in part on the very different interpretations offered by the parties.[50] This fact alone would not be enough to create an ambiguity under Kansas law.[51] However, the bankruptcy court also looked at ¶ 5(e) in light of the contract as a whole and determined that an ambiguity existed.[52] The bankruptcy court admitted that ¶ 5(e), read in iso-

---

43. *In re Dyer*, 322 F.3d at 1190–91

44. *Id.* at 1191.

45. *Id.*

46. *In re Rafter Seven Ranches, LP*, No. 05–40483, 2008 WL 2783278, at *14–15 (Bankr. D.Kan. July 15, 2008).

47. *See United States v. Weidner*, 437 F.3d 1023, 1042 (10th Cir.2006) ("An abuse of discretion occurs when the district court's decision is arbitrary, capricious, or whimsical, or results in a manifestly unreasonable judgment.") (internal quotation marks omitted); *Ryan v. Am. Natural Energy Corp.*, 557 F.3d 1152, 1157 (10th Cir.2009) ("Where there are two permissible views of the evidence, a finding adopting one of those views cannot be clearly erroneous.").

48. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Parks v.* FIA Card Servs. *(In re Marshall)*, 550 F.3d 1251, 1255 (10th Cir.2008).

49. *In re Marshall*, 550 F.3d at 1255.

50. *In re Rafter Seven Ranches, LP*, No. 05–40483, 2008 WL 2783278, at *9 (Bankr. D.Kan. July 15, 2008) ("The parties' interpretations could not be much further apart, the language is capable of more than one interpretation, and thus the Court must look past the language of just this one sentence, to the entire contract, to see if the parties' intention can be ascertained from its four corners.").

51. *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan.App.2d 932, 159 P.3d 215, 220 (Kan.Ct. App.2007).

52. *In re Rafter Seven Ranches, LP*, 2008 WL 2783278, at *8 ("[T]his Court finds that this contract, at least as it relates to the single sentence contained in paragraph 5(e), is ambiguous when read in concert with the other ten pages of the contract.").

lation, appears to give Debtor a right to crop revenue from the three Tracts of land in perpetuity.[53] That same paragraph, however, takes on a different meaning when considered in context of the entire Agreement. These differing meanings are also the basis of the bankruptcy court's finding of ambiguity, as are the varying interpretations of ¶ 5(e) given by Friesen himself.[54] Based on these findings, the bankruptcy court correctly concluded that ¶ 5(e) was ambiguous.

When a contract term is deemed ambiguous, the next step is usually to consider extrinsic evidence to determine the intent of the parties. The bankruptcy court, however, took an interim step of construing ¶ 5(e) in context of the

entire Agreement to determine its meaning.[55] The bankruptcy court reviewed several other provisions of the Agreement, all of which indicate the parties believed the entire settlement would be effectuated by about the time of the harvest of the 2006 wheat crop. When read in context, the bankruptcy court concluded that the most reasonable interpretation of ¶ 5(e) was that Debtor would receive the net income from the crop actually in the ground at the time the parties were negotiating the deal, that the property would be sold very soon after July 15, 2006 if Debtor could not pay $240,000 by the agreed date, and thus, there would not even be a future crop to discuss at the time of the negotiation. Even without considering extrinsic evidence, the bankruptcy court interpreted

---

53. *Id.*

54. *Id.* at *9 ("Mr. Friesen's own complicated interpretation of this sentence, skewed to best fit the facts as they have subsequently developed since the agreement was actually negotiated, however, is probably the best evidence that this sentence is, in fact, ambiguous."). The bankruptcy court described Mr. Friesen's interpretation of ¶ 5(e) at trial as follows:

> 1. That as to Tracts 1 and 2, Rafter Seven is entitled to all net income (profit) on any crop that was in the ground ("2006 crop") from January 11, 2006 until the sale on that particular ground was closed;
> 2. That as to Tract 3, Rafter Seven is entitled to the net income (profit) on the 2006 crop that was in the ground on January 11, 2006; but
> 3. For any crop planted and harvested on Tract 3 after the 2006 crop was harvested, this sentence entitles Rafter Seven to all gross income until the sale of Tract 3 is closed.

*Id.* at *8–9. In his earlier deposition, however, Mr. Friesen described ¶ 5(e) as merely a " 'quid pro quo' provision that related to assets known by WNL and the debtor to exist as of January 2006, namely rent for the crops to be harvested in 2006 from the three tracts of real estate, and the funds being held in the Finney County Registry." *Id.* at *5 (emphasis omitted).

55. Debtor also argues the bankruptcy court erred by failing to construe the provisions of the Agreement against WNL, as the drafter of the Agreement. Under Kansas law any ambiguity in the agreement is to be construed against the drafter. *Dillard Dep't Stores, Inc. v. State Dep't of Human Res.*, 28 Kan.App.2d 229, 13 P.3d 358, 364 (Kan.Ct.App.2000). But Kansas courts have limited application of this rule of construction where the parties are of equal bargaining power and had ample opportunity to fully examine the provisions of the proposed agreement. *Williams v. Alumni Ass'n of Univ. of Kan.*, 189 P.3d 580, 2008 WL 3367599, at *6 (Kan.Ct.App.2008); *Wood River Pipeline Co. v. Willbros Energy Servs. Co.*, 241 Kan. 580, 738 P.2d 866, 872 (Kan.1987). Judge Karlin found that both parties counsel were involved in suggesting and editing the language of this Agreement. In a previous order entered after hearing evidence regarding the drafting process, Judge Somers held that "Friesen on behalf of the debtor, and the debtor's lawyer to a lesser extent, had input into the terms of the Agreement." *Journal Entry of Order Denying Debtor's Motion to Interpret the Agreement Between WNL and the Debtor* at 2 ¶ 3, in Appellant Appx. Vol. I at 118. The bankruptcy court also noted that Friesen, who himself has a law degree, participated in drafting and editing some of the language in the Agreement. Thus, there is no error in the bankruptcy court's failure to apply this rule of construction.

the Agreement to not give Debtor a property interest in the 2007 crop. The bankruptcy court noted that this interpretation "is the only way to read all the sections in harmony" and that Debtor's suggested interpretation would lead to absurdity because it ignores the other provisions. We believe the bankruptcy court's interpretation complies with Kansas law by interpreting the Agreement as a whole without resort to extrinsic evidence, and by giving ¶ 5(e) a fair, reasonable, and practical construction which avoids absurdity.[56]

### 2. Weighing Extrinsic Evidence in the Summary Judgment Context

Alternatively, the bankruptcy court concluded that the extrinsic evidence offered by the parties supported its "four corners" interpretation. The bankruptcy court considered testimony of WNL's principal (Wayne Hansemeyer) and Friesen, as well as the conduct of the parties after execution of the Agreement. The bankruptcy court found much of Friesen's testimony to be inconsistent and/or not credible and ultimately relied on Hansemeyer's interpretation. The bankruptcy court concluded that Friesen's current interpretation of ¶ 5(e) did not comport with his conduct immediately after the Agreement was signed, thus indicating to the bankruptcy court that Friesen changed his story in

order to support his Motion for Damages. Debtor argues that the bankruptcy court wrongly evaluated this extrinsic evidence and "cherry picked" evidence to support its conclusion. Essentially, Debtor argues the bankruptcy court should have believed Friesen's version of events rather than WNL's.

We ultimately conclude no clear error in the bankruptcy court's weighing of the extrinsic evidence. Nevertheless, the procedural posture of the case (summary judgment) makes the bankruptcy court's weighing of extrinsic evidence at an evidentiary hearing somewhat unusual. In the normal case, "[once] a contract is determined to be ambiguous, the meaning of its terms is generally an issue of fact to be determined in the same manner as other disputed factual issues."[57] In other words, "in an ambiguous contract, if the intent of the parties is disputed, a genuine issue of material fact exists which cannot be determined summarily by the court."[58] Courts are reluctant to grant summary judgment when the disposition of a case turns on a determination of intent because the resolution of that issue "depends so much on the credibility of the witnesses, which can best be determined by the trier of facts after observation of the demeanor of the witnesses during direct and cross-examination."[59]

---

**56.** *See Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 961 P.2d 1213, 1219 (Kan. 1998) ("A reasonable construction of the contract is one that makes the contract fair, customary, and such as prudent persons would intend."); *Time Warner Entm't Co., LP v. Everest Midwest Licensee, LLC*, 381 F.3d 1039, 1044–45 (10th Cir.2004) ("Reasonable rather than unreasonable interpretations of contracts are favored, and accordingly, interpretations which lead to absurdity or negate the purpose of the contract should be avoided.") (construing Kansas law) (internal quotation marks omitted).

**57.** *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1151 (10th Cir.2000) (internal quotation marks omitted).

**58.** *Gomez v. Am. Elec. Power Serv. Corp.*, 726 F.2d 649, 651 (10th Cir.1984).

**59.** *See Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir.1979); *see also* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2730 (3d ed.1998) (noting that courts are cautious in granting summary judgment when resolution of the dispositive issue requires a determination of state of mind because much depends on the credibility of witnesses testify-

■ The presence of a contractual ambiguity, however, does not automatically preclude summary disposition. Summary judgment would be appropriate in such cases if the extrinsic evidence presented in the summary judgment materials is so one-sided that it supports only one of the conflicting interpretations and no reasonable person could decide it to the contrary.[60] Although the bankruptcy court did not explicitly make such a finding, it can be inferred from the court's discussion of the evidence and its statement that it was "highly unlikely" that the parties' mutual intent was as Debtor claimed.[61]

At the same time, it appears that the bankruptcy court did more than merely review extrinsic evidence for a genuine issue of fact. Rather, the bankruptcy court's findings give the strong impression that the court assessed the witnesses' credibility. To the extent the bankruptcy court weighed the evidence and resolved factual disputes concerning the parties' intent, the hearing was more akin to a trial on the merits, rather than a summary disposition.[62]

Ordinarily in the summary judgment context, a trial court "may not make credibility determinations or weigh the evidence."[63] For this reason, the Tenth Circuit generally disfavors the taking of oral testimony in summary judgment proceedings.[64] As noted by the Tenth Circuit, "oral testimony at the summary judgment stage creates a strong temptation for a judge to assess the witness' credibility. It is axiomatic that a judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment."[65] This is because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"[66]

■ To the extent the bankruptcy court's hybrid procedure allowed it to both weigh evidence and witness credibility, while also purporting to grant summary judgment, the procedure may have been a technical violation of Rule 56. Any such

---

ing as to their own states of mind—a matter best determined by a jury).

**60.** *Torres Vargas v. Santiago Cummings,* 149 F.3d 29, 33 (1st Cir.1998); *Bourque v. FDIC,* 42 F.3d 704, 708 (1st Cir.1994); *see also* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2730.1 (3d ed.1998) ("[S]ummary judgment will be granted if the documents supporting the Rule 56 motion are undisputed and reveal that there is no question as to intent.").

**61.** *In re Rafter Seven Ranches, LP,* No. 05–40483, 2008 WL 2783278, at *11 (Bankr. D.Kan. July 15, 2008).

**62.** *See Seamons v. Snow,* 206 F.3d 1021, 1026 n. 1 (10th Cir.2000) (distinguishing a summary judgment hearing from a "single-issue trial," which courts may hold under limited circumstances, pursuant to Rule 42(b)).

**63.** *Gossett v. Okla. ex rel. Bd. of Regents,* 245 F.3d 1172, 1175 (10th Cir.2001) (stating that in the summary judgment context, a court "may not make credibility determinations or weigh the evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe.") (internal quotation marks omitted).

**64.** *Seamons,* 206 F.3d at 1026. In the *Seamons* decision, the Tenth Circuit notes that Rule 56 is silent on whether oral testimony can be introduced at a summary judgment hearing, but that Rule 43(e) authorizes the use of oral testimony for motions generally. *Id.* at 1025. While these Rules do not prohibit the use of oral testimony at the summary judgment stage, the Tenth Circuit concludes that "oral testimony on summary judgment motions should be used sparingly and with great care." *Id.* at 1026.

**65.** *Id.* at 1026.

**66.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

error, however, was harmless. Essentially, what the bankruptcy court did was to bifurcate and try first the threshold issue of the parties' intent.[67] Such a single-issue trial is permitted by Rule 42(b) and is particularly useful where, as in this case, the court is the ultimate trier of fact and can quickly and economically resolve a dispositive issue.[68] Since bankruptcy courts cannot conduct jury trials, there is no danger of the court usurping the fact-finding role of a jury by conducting such a single-issue trial.[69]

In addition, the parties had notice of, and did not object to this procedure. Debtor does not assert error in the use of this procedure in his appeal. Even if we ascribed error to this procedure, the remedy would be a bench trial on the disputed issue, which the parties have already received.

To the extent the bankruptcy court conducted a bifurcated trial on the parties' intent, its findings are supported by the record. The bankruptcy court weighed the parties' conduct, deposition testimony and live testimony. Although Debtor claims the bankruptcy court "cherry picked" evidence, Debtor fails to point to any evidence that the court failed to consider. Rather, the record reflects that the bankruptcy court carefully considered Debtor's proffered evidence. The bankruptcy court undoubtedly viewed the evidence differently than Debtor and found WNL's evidence more believable. The fact that the bankruptcy court did not adopt Debtor's view of the evidence is not a basis for overturning the order.

### D. Other Alleged Procedural Errors

Debtor next takes issue with the bankruptcy court's scheduling orders and pretrial order, which prevented Debtor from amending its Motion for Damages to include other parties, and from adding allegations concerning other alleged stay violations, specifically the sale of the 2008 wheat crop from Tract 3. Debtor's brief includes a long, critical rendition of the pretrial procedures. The only specific alleged errors we can distill from this discussion are that: (1) the bankruptcy court should have specifically adopted Rule 7016 for purposes of the contested matter and should have set deadlines for amending pleadings and joining parties; (2) the bankruptcy court's pretrial order limiting amendments and joinder of parties came without notice to Debtor and was arbitrary; and (3) Judge Karlin acted in a biased fashion. None of Debtor's arguments support reversal of the bankruptcy court's order.

■ Debtor's first argument centers on Rule 7016, which generally governs pretrial conferences and management in adversary proceedings. Pursuant to Rule 9014, Rule 7016 does not apply to contested matters such as Debtor's Motion for Damages. Debtor concedes this point but nevertheless argues the bankruptcy court should have complied with the Rule and formally adopted it for purposes of resolving Debtor's Motion for Damages. Rule 9014 does allow the bankruptcy court "at any stage in a particular matter [to] direct that one or more of the other rules in Part VII shall apply." Fed. R. Bankr.P. 9014(c) (2004). Rule 9014 further requires the

---

**67.** *See Nielsen v. W. Elec. Co., Inc.,* 603 F.2d 741, 743 (8th Cir.1979) (treating proceedings below as a trial on disputed issues even though cast in the form of a motion for summary judgment).

**68.** *See Seamons,* 206 F.3d at 1026 n. 1; *Stewart v. RCA Corp.,* 790 F.2d 624, 629 (7th

Cir.1986) ("If the judge was entitled to resolve disputes at trial, he was entitled to try a single issue under Fed.R.Civ.P. 42(b).").

**69.** *See Seamons,* 206 F.3d at 1026 n. 1 (concluding trial court could not have conducted single-issue trial because both parties requested and were entitled to a jury trial).

court to "give the parties notice of any [such] order ... to afford them a reasonable opportunity to comply with the procedures prescribed by the order." *Id.* Here, the bankruptcy court conducted a pretrial conference, and entered scheduling and pretrial orders without issuing any specific order invoking Rule 7016 or providing any formal notice to the parties of the applicability of those rules. Nevertheless, Debtor provides no authority for the proposition that the bankruptcy court's failure to comply with the particulars of Rule 9014 is a basis for overturning the order and we conclude it is not.

■ A bankruptcy court's power to manage a case does not depend upon the Bankruptcy Rules, but rather it arises from the court's "inherent authority to issue pretrial case management orders and to enforce them by appropriate measures." [70] So even without invoking Rule 7016, the bankruptcy court had inherent authority to manage the pretrial procedures for the contested matter. Moreover, Debtor has not shown any prejudice to it by the bankruptcy court's failure to formally invoke Rule 7016. [71] Debtor argues the bankruptcy court should have set deadlines for amending pleadings and joining parties, yet Debtor had the opportunity to request deadlines but elected not to do so. Indeed, the bankruptcy court's initial scheduling order merely adopted the deadlines requested by the parties in a jointly-filed planning report. [72] That planning report, prepared by Debtor's attorney, did not request a deadline for amending pleadings or joining parties and so none was included in the bankruptcy court's scheduling order. Debtor subsequently requested at least two extensions of the discovery deadline, but never specifically sought a deadline for amending pleadings or joining parties. Under these circumstances, the lack of deadlines does not constitute error nor an abuse of discretion.

■ Debtor also argues it was harmed because it was not allowed to add allegations concerning the 2008 wheat crop and to join other parties such as Southwest Ag and Southwest Ag's principal, Perry Hanson. Debtor never specifically sought leave to amend or add parties. Rather, Debtor impliedly sought to amend its Motion for Damages by including new theories and types of recovery in the proposed pretrial order it submitted to the bankruptcy court. The bankruptcy court recognized this as an implicit request by Debtor to amend his pleadings [73] and denied the request.

Other than calling the bankruptcy court's decision "arbitrary," Debtor does not provide any legal authority for why the bankruptcy court's decision was improper. [74] More importantly, even if the bank-

---

70. *In re Dorsie's Steak House, Inc.*, 130 B.R. 363, 365 (D.Mass.1991).

71. *See id.* (noting lack of prejudice to debtor).

72. *Report of Parties' Planning Meeting*, in Appellant Appx. Vol. I at 150–55.

73. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir.2006) (in non-bankruptcy setting, finding plaintiff's attempt to add a new claim to the pretrial order was the equivalent of asking leave to amend his complaint, and must be evaluated by the court under the standards set forth in Rule 15(a)).

74. If this were an adversary proceeding, the Debtor's request would be governed by Rule 7015. That rule, however does not apply to contested matters under Rule 9014. Even if Rule 7015 did apply, Debtor has not shown it would have been entitled to amend. The grant or leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court. *Minter*, 451 F.3d at 1204. Undue delay is one of the justifications for denying a motion to amend. *Id.* at 1205–06 ("denial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay"). The second factor in deciding a motion to amend the

ruptcy court did somehow err (which Debtor has not shown), Debtor cannot show any prejudice resulted from the court's decision. The bankruptcy court denied Debtor's request without prejudice to pursuing its additional claims related to the 2008 crops or otherwise in a later proceeding. As it turns out, pursuit of those claims would be futile. The bankruptcy court concluded that Debtor has no interest in any Tract 3 crop proceeds beyond the 2006 crop. We affirm that ruling today. Since Debtor's estate had no interest in the 2007 or 2008 crops, any action taken by WNL, Koster, Mr. Hanson or Southwest Ag relative to those crops would not be a violation of the stay. Thus, Debtor's inability to add those claims or parties at an earlier date caused no prejudice.

Debtor has also failed to show that the bankruptcy court's ruling came without sufficient notice. That the bankruptcy court's ruling on proposed amendments came in the pretrial order and not earlier in the case is a function of Debtor's delay, not the bankruptcy court's. Debtor should not now be heard to complain the pretrial order entered without sufficient notice to Debtor.

■■■ Lastly, Debtor accuses Judge Karlin of being biased in her "handling of the case," her refusal to allow amendments, and in her rulings at the evidentiary hearing.[75] These allegations are without merit. All of the allegedly biased conduct Debtor points to concerns the bankruptcy court's rulings at trial and in pretrial hearings. Such allegations are not sufficient to prove bias.[76] "[J]udicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel" do not establish bias unless they display "deep-seated and unequivocal antagonism that would render fair judgment impossible."[77] Nothing in the record suggests such deep-seated favoritism or antagonism.

■■■ Furthermore, the Tenth Circuit has held that an appellant waives bias argument on appeal if the appellant failed to timely move for disqualification under 28 U.S.C. § 455.[78] A review the bankruptcy court docket shows Debtor did in fact file a motion for recusal of Judge Karlin, but it did not do so until January 4, 2009, after the parties had completed briefing in this appeal.[79] It is questionable whether

---

pleadings is whether the amendment would prejudice the nonmoving party. *Id.* at 1207–08. Here, Debtor has not provided an adequate explanation for its delay in seeking leave to amend. Debtor knew of the planting of the 2008 crop and the involvement of Southwest Ag and Mr. Hanson, at the very latest, when it took Mr. Hanson's deposition in January 2007. Yet Debtor did not seek to amend until the eve of the pretrial conference some three months later. Debtor consistently argued it needed additional time to get the documents from the Farm Service Agency, but Debtor has admitted those documents did not ultimately provide a basis for any amendment of its Motion. In addition, the proposed amendments would likely have prejudiced the parties. Discovery had been completed on the issues actually presented in Debtor's Motion. Neither Southwest Ag nor Mr. Hanson had directly participated in the proceedings.

Adding additional issues and parties would have caused considerable delay and broadly expanded the scope of the trial.

**75.** *Appellant's Br.* at 11, 15, and 24.

**76.** *United States v. Erickson,* 561 F.3d 1150, 1169 (10th Cir.2009), *petition for cert. filed,* (U.S. June 12, 2009) (No. 08–10987) (holding that judicial rulings at trial ordinarily will not suffice to establish bias warranting recusal).

**77.** *Liteky v. United States,* 510 U.S. 540, 556, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

**78.** *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1239 (10th Cir.2000).

**79.** This pleading is not included in either party's appendix. This Court therefore takes judicial notice of Debtor's *Motion for Recusal*

Debtor's motion was "timely," since Debtor filed it some six months after denial of the Motion for Damages. In any event, on January 8, 2009, the bankruptcy court issued an order denying the motion to recuse. Debtor could have, but did not directly appeal that order and Debtor cannot do so informally through this appeal.

### E. Mootness of Appeal of Order Enforcing the Agreement

In its opening brief, Debtor argues that the Notice of Suit it filed was proper and that the bankruptcy court erred in concluding the Notice of Suit violated the Agreement. In its Reply Brief, Debtor suggests its appeal of the bankruptcy court's order enforcing the Agreement and nullifying the Notice of Suit "may be moot" since Debtor now owns Tract 3. We agree that this issue is now moot.

 An appellate court has an obligation to determine the jurisdictional issue of whether the appeal is moot.[80] There are two ways in which bankruptcy appeals may become moot—constitutional mootness and equitable mootness.[81] The concept of constitutional mootness provides that an appeal is moot where there is no "case or controversy" because some event has occurred post-appeal that makes it impossible for the court to grant any effectual relief whatever. Equitable mootness occurs where "even though effectual relief could conceivably be fashioned, implementation of that relief would be inequitable."[82]

 In this case, the bankruptcy court's order determined that Debtor's filing of the Notice of Suit violated the Agreement because it had the effect of clouding title to Tract 3. The bankruptcy court then deemed the Notice of Suit immediately invalid so that its order would "have the effect of eliminating and/or invalidating that Notice from the title to the subject real estate."[83] Subsequently WNL sold Tract 3 to Debtor. If this Court were to reverse the bankruptcy court's order,[84] it could possibly restore the Notice of Suit with the register of deeds. Such restoration would not provide Debtor any effectual relief. By its own terms, the Notice of Suit purported to provide notice that "[f]ailure to account and comply may deprive Rafter Seven Ranches, LP from purchasing [Tract 3] and, as such, may constitute an actual or equitable lien on this property."[85] Since Debtor already owns Tract 3, Debtor has no need to provide further notice of its purported right to purchase Tract 3 or to secure an "actual or equitable lien" on Tract 3. Accordingly, we dismiss Debtor's appeal in case number KS–08–071 as moot.

Debtor argues that its appeal may not be moot because this Court could "correct" the bankruptcy court's allegedly erroneous finding that the Notice of Suit clouded title

---

Pursuant to 28 U.S.C. 455, filed January 1, 2009, and the bankruptcy court's subsequent order denying the motion on January 8, 2009. *See In re Telluride Income Growth LP*, 364 B.R. 407, 414–15 (10th Cir. BAP 2007) (taking judicial notice of relevant bankruptcy court records filed after the appeal).

80. *In re Inv. Co. of the Southwest, Inc.*, 341 B.R. 298, 306 (10th Cir. BAP 2006).

81. *Id.*

82. *Id.* (internal quotation marks omitted).

83. *Memorandum Opinion and Order* at 6, in Appellant Appx. Vol. III at 419.

84. We specifically take no position on whether reversal of the bankruptcy court's order would be appropriate.

85. *Notice of Suit Re: [Tract 3]* at ¶ 2, in Appellant Appx. Vol. II at 343.

on Tract 3 and delayed the sale. If this Court does not correct the bankruptcy court's finding, Debtor argues it will be barred by res judicata from alleging in some later lawsuit that WNL harmed Debtor by delaying the sale of Tract 3. Debtor's argument, however, does not demonstrate a live controversy for this Court to decide. At best, Debtor's desire to avoid the preclusive effect of the bankruptcy court's order could be construed as a request for vacatur of that order, given the mootness of the appeal.

■■■■■ Generally speaking, when a case becomes moot while on appeal, an appellate court will vacate the judgment below and remand with a direction to dismiss.[86] Vacatur, however, is an equitable remedy and is not appropriate in every case.[87] Where a moot appeal is dismissed without vacating, the unvacated order continues to preclude relitigation of essential issues.[88] On the other hand, vacating a lower court's judgment will normally permit relitigation of the unreviewed issues.[89] Thus, we must determine if vacatur is appropriate in this case.

■■■ A key consideration in determining the appropriateness of vacatur is whether the party seeking it caused the mootness through voluntary action.[90] Vacatur is appropriate where mootness occurs due to circumstances outside the control of the appealing party, such as happenstance or the unilateral action of the party who prevailed in the lower court.[91] On the other hand, where the appellant has voluntarily contributed to the mootness of the appeal, such as by entering into a settlement, vacatur is generally not justified.[92] These circumstances reflect the remedy's equitable nature. "A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment."[93] However, "a litigant who has voluntarily abandoned review lacks equitable justification for vacatur."[94] In this case, mootness did not occur by happenstance. Rather, Debtor voluntarily caused mootness of the appeal by purchasing Tract 3.

■■■ The mere fact that Debtor still believes the bankruptcy court's order is

86. *In re W. Pac. Airlines, Inc.*, 181 F.3d 1191, 1197 (10th Cir.1999) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950)).

87. *In re W. Pac. Airlines, Inc.*, 181 F.3d at 1197–98.

88. *In re Otasco, Inc.*, 18 F.3d 841, 843 (10th Cir.1994).

89. *Id.*

90. *In re W. Pac. Airlines, Inc.*, 181 F.3d at 1197.

91. *Amoco Oil Co. v. U.S. Envtl. Prot. Agency*, 231 F.3d 694, 698 (10th Cir.2000) (listing cases); *see also United States v. Jenks*, 129 F.3d 1348, 1352 (10th Cir.1997) (vacating district court judgment because prevailing party's unilateral action rendered case moot);

*Jones v. Temmer*, 57 F.3d 921, 923 (10th Cir. 1995) (granting vacatur because change in law caused mootness).

92. *Amoco Oil Co.*, 231 F.3d at 698–99; *see also In re W. Pac. Airlines, Inc.*, 181 F.3d at 1197–98 (denying request for vacatur because appellants voluntarily contributed to the mootness of the appeal); *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 76 F.3d 1142, 1144–45 (10th Cir.1996) (denying city's request for vacatur because city rendered case moot by voluntarily withdrawing the policy invalidated by the district court).

93. *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994).

94. *19 Solid Waste Dep't Mechs.*, 76 F.3d at 1144 (internal quotation marks omitted).

wrong is not grounds for vacatur. If it were, such a rationale would "[collide] head on with the Supreme Court's admonition that a party should not be allowed to use vacatur as a refined form of collateral attack on the judgment." [95] Further, our task "is to dispose of a moot case in the manner most consonant to justice in view of the nature and character of the conditions which have caused the case to become moot." [96] Allowing vacatur here would serve only the interests of Debtor and could have unforeseen consequences in the underlying bankruptcy case.[97] As such, we decline to exercise our equitable power to vacate.

## IV. Conclusion

For the reasons stated herein, the decision of the bankruptcy court granting summary judgment in favor of WNL and Koster and denying the summary judgment motion of Debtor on Debtor's Motion for Damages is AFFIRMED. Debtor's appeal of the bankruptcy court's order enforcing the Agreement is DISMISSED as MOOT.

---

**95.** *Id.* at 1144–45 (internal quotation marks omitted).

**96.** *Id.* at 1145 (internal quotation marks omitted).

**97.** *See id.* at 1145 (declining vacatur where it would serve only one party); *In re W. Pac. Airlines, Inc.,* 181 F.3d at 1198 (declining vacatur where such action could have unforeseen consequences in underlying bankruptcy case).